605 So.2d 28 (1992)
Wilnetia BRAKE
v.
Sally SPEED.
No. 89-CA-14.
Supreme Court of Mississippi.
July 22, 1992.
*29 Jim Davis Hull, Moss Point, for appellant.
James W. Backstrom, Bryan Nelson Schroeder Backstrom Castigliola & Banahan, C. Michael Lanford, Pascagoula, for appellee.
EN BANC.
BANKS, Justice, for the Court:
Wilnetia Brake (Brake) asks this Court to address familiar principles of tort law made problematic because of the factual scenario to which she attempts to apply them. She was involved in two accidents within a six-month time period, and she sustained injuries in both. The first accident was caused by the negligence of the defendant here involved, Sally Speed (Speed). Brake maintains that the two accidents resulted in a single, indivisible injury to her neck and back, and that Speed, according to principles of joint and several liability, was responsible for the entire injury. Finding Brake's arguments with regard to this and other points raised without merit, we affirm.

I.
On March 7, 1986, Brake was operating a vehicle which was hit in the rear by a car being driven by Speed.[1] On September 19, 1986, Brake was injured again when the car she was operating was hit broadside. On September 18, 1987, Brake filed a complaint in the Circuit Court of Jackson County against Speed, claiming that she sustained injury to her lower back, right hip and leg. These injuries caused her to experience headaches, paravertebral muscle spasms of the neck and upper thoracic spine, and extreme nervousness. She claimed that she was unable to work because of the injuries and lost $21,153 in income.
The case against Speed proceeded to trial and at the conclusion the jury returned a verdict for Brake, assessing her damages at $5,600. An order overruling motion for new trial was entered November 28, 1988. Aggrieved, Brake appeals to this Court, presenting the following issues for our review and decision:
1. Whether the trial court erred in refusing to grant an instruction directing the jury to assess Speed for the entire amount of damages suffered where it could not distinguish the injuries arising out of first accident from those arising out of the second accident;
2. Whether the trial court erred in allowing the jury to be informed that Brake had filed a lawsuit arising out of the second accident making the same or similar injury claims;
3. Whether the court erred in refusing to grant an additur; and
4. Whether the court erred in refusing to conduct a hearing to determine whether certain jurors were improperly influenced.

II.
There was no issue of liability at trial and the sole question to be determined was the amount of damages suffered by Brake as a result of Speed's negligence. Brake testified that prior to March 7, 1986, the *30 date of the first accident, she worked as a sales representative for Watch-It Publications. She stated that at the time of the collision, she was earning approximately $165 per week. Brake could not verify this salary because she had not filed any tax returns since 1983. She stated that although her employers withheld income taxed from her, she never received any W-2 forms. Brake recalled that she had been working for Watch-It Publications only for a couple of months at the time of the March accident.
Minutes before the collision, Brake was stopped at a traffic light. She had been at the light only a couple of minutes when she heard brakes screeching and glanced up. At that second, the rear of her vehicle was hit. Brake stated that she was thrown all around, the steering wheel pressed against her arms and shoulders, and her head went forward and backwards. She made two small attempts to get out of the car. Brake testified that Speed told her:
Don't move. You've got to be hurt. You're hurt. Oh, my God, don't move. Don't move. You have to be hurt. You got the full impact of me hitting you. I'm sorry. Just don't move. Don't move. You got the full impact of me hitting you going 55 miles an hour.
The first thing Brake noticed after the accident was excruciating pain in her neck, back and stomach.
The collision was investigated by Jimmy O'Banner, (O'Banner) of the Mississippi Highway Patrol. During his investigation, O'Banner talked to Brake and Speed; neither reported any injuries to him. In fact, he marked "no injury" on the accident report for both Brake and Speed. On cross-examination, however, O'Banner stated that at the time of the accident, he thought that Brake was in shock. He stated that he offered Brake an ambulance several times, but she declined. The officer only let her leave the scene because she promised that she would go to the emergency room later that night. Based on his observation of the scene of the accident, he surmised that Brake sustained a rear-end whiplash type injury.
At the conclusion of the investigation, Brake drove her car home. She testified that the car she was driving was her daughter's car and it was "totalled"[2] in the accident. Upon arriving home, she felt weak, was having cramps in her fingers and feet and experiencing difficulty in breathing. Later that night, Brake was treated in the emergency room of Singing River Hospital in Pascagoula, Mississippi.
Approximately three days after the collision, Brake sought treatment from a chiropractor, Dr. Alan Netherland, whose procedure, she said, afforded her some relief from pain and discomfort. Although she continued to see Dr. Netherland, Brake did not think that her condition improved during the four or five months of treatments from Dr. Netherland before the second collision.
Brake was still under chiropractic care at the time of the second accident on September 19, 1986. In fact, she was returning from Dr. Netherland's office when the car she was driving was hit by a car driven by James Johnson (Johnson). Brake testified that the second accident had little or no comparison to the first  "[i]t was just  it was from the side and just slightly." Her car sustained damage to the passenger door and front end.
Brake felt some pain and discomfort from the collision, but thought that this second accident primarily aggravated her existing problems. Her son and a neighbor's daughter were with her at the time of the collision. All three were transported to the emergency room of Singing River Hospital because Brake thought everyone should be examined. They were treated and released. The emergency room physician suggested that Brake contact Dr. Netherland, who examined and treated her on the night of this second collision.
*31 Brake continued to experience pain in the same areas where she hurt after the first accident. Also, she kept seeing Dr. Netherland, who basically administered the same treatments as before. Dr. Netherland stated that he treated Brake many times since the first accident and was still treating her at the time of trial. He testified that the September accident aggravated the condition existing as a result of the March accident. He found the latter collision was more a disturbance than a traumatic injury. Further, it was his opinion that before the second accident, Brake had recovered considerably. In fact, on cross-examination, he testified that on the three visits prior to the September accident, Brake had no complaints of neck pain and her condition was generally improved.
The chiropractor stated that the injuries would restrict Brake's ability to work and/or to perform normal household duties. He also testified that arthritic changes will occur, sclerosis will interfere with nerve irritation and produce pain. He opined that Brake will need treatment for the rest of her life.
As a result of injuries received in the September accident, Brake sued Johnson. After this second collision, in addition to chiropractic treatment, Brake saw a number of medical doctors and underwent a battery of tests. She testified that the total amount of medical bills for treatment of injuries after March 7, 1986, was $11,560.
Speed sought to show that Brake was suing her for the same injuries that she claimed were made by and for which she used Johnson. Brake's testimony on cross-examination established that several of the claims she was making against Speed were also claimed against the tortfeasor from the September accident.
Speed was called to testify in her own behalf. She observed that after the collision, she asked Brake if she was hurt. She stated that Brake was upset about damaging her daughter's car. In her estimation, Brake did not appear to have any abnormal movement. Speed remembered that Brake mentioned that her stomach was hurting, but she did not hear Brake complain about neck or back pain.

III.
Brake argues that the court erred in refusing to grant instruction P-4(A). She maintained that the evidence indicated that Speed and Johnson were both tortfeasors whose negligent actions contributed and combined to cause a single individual injury to Brake. Speed responds that the court properly refused the instruction since it was not a correct statement of law because Speed was neither a co-nor joint tortfeasor and was thus not subject to joint and several liability for damages not caused by her. Instruction P-4(A) read,
The court instructs the jury that it is not necessary that the negligence of the operator of a motor vehicle be the sole cause of an injury in order to make the operator of the vehicle liable for that injury. It is sufficient that the operator's negligence, concurring with some other cause, proximately caused the injury.
Where successive negligent acts or omissions of two persons, although acting independently of each other, are, in combination the direct proximate cause of a single injury to a third person, and it is not possible to determine in what proportion each contributed to the injury, each negligent person is liable for the entire injury, even though that person's act alone might not have caused the entire injury or the same damage might have resulted from the act of the other negligent person. Damages may not be apportioned between individuals whose negligence is, in combination, the direct and proximate cause of a single injury to a third person.
If you find from a preponderance of the evidence that the Defendant, Sally Speed, was negligent in the operation of her vehicle on March 7, 1986, as defined by other instructions given you by the court, and that James Johnson was negligent in the operation of his vehicle on September 19, 1986, and that the negligence, if any, of Sally Speed and James *32 Johnson each was a proximate contributing cause of the Plaintiff's injuries, if any, and if you further find that it is not possible to determine in what proportion their negligence, if any contributed to the Plaintiff's injuries, if any, then it is your sworn duty to return a verdict for the Plaintiff for her entire injury and damages, if any.
As early as 1965, this Court outlined the general principles to be applied when there existed nonconcurrent wrongs. In Dennis v. Prisock, 254 Miss. 574, 181 So.2d 125 (Miss. 1985), the plaintiff was involved in eight separate, successive accidents in nearly three years. We held that
[r]ecoverable damages must be reasonably certain in respect to the efficient cause from which they proceed. Plaintiff had the burden to show by a preponderance of the evidence that the persons charged, the appellants, were the wrongful authors of 11 or an apportionable part of her damages. This she failed to do. As was said in Blizzard v. Fitzsimmons, 193 Miss. 484, 10 So.2d 343 (1942): "a defendant chargeable with a non-concurrent wrong may be made liable for damages for his part when the damages are such that they may be apportioned, and a portion thereof can be traced with reasonable certainty to the wrong of the defendant as the cause of that portion... ." * * * The rule of certainty should not be strictly applied, but the evidence must support jury findings of reasonable probability. In short, some minimum standards of proof as to the fact and extent of the loss will always be required. (citation omitted) Here there were multiple occasions of injury to Mrs. Prisock's back, preceding and subsequent to the accident of July 6, 1959. Yet the evidence does not show with any reasonable probability the connection between the accident in question and her back injuries, when it is considered with reference to her other accidents. (citation omitted).
Id. 254 Miss. at 582-83, 181 So.2d 125. Prisock, relied upon one of our earlier decisions, Blizzard, 193 Miss. 484, 10 So.2d 343. There, the Court was faced with a "single and indivisible result,  an injury not apportionable so that a part may be traced to one cause and another part to another cause, and the damages apportioned accordingly." Blizzard, 193 Miss. at 493, 10 So.2d 343. The Court held that "recoverable damages must be reasonably certain in respect to the efficient cause from which they proceed," and that the burden is on the claimant to show by a preponderance of the evidence that the person charged was the wrongful author of that cause. Id. at 492, 10 So.2d 343.
The Court phrased the issue as, whether or not "the ultimate single and indivisible result happened because of the earlier series of falls for which the defendant is not liable, or from the latter part of the series for which, by concession but not by decision, the defendant is liable?" Id. at 493, 10 So.2d 343. "[F]or manifestly a defendant cannot be held liable for the whole of a series of consecutive, and not concurrent, happenings when he is liable if at all, only for a part." Id. (emphasis added) "A defendant chargeable with a nonconcurrent wrong may be made liable for damages for this part when the damages are such that they may be apportioned, and a portion thereof can be traced with reasonable certainty to the wrong of the defendant as the cause of that portion." Id. at 493, 10 So.2d 343.
In situations similar to the one at bar, other courts considering the matter, have consistently held that where a second injury or aggravation of the first injury is attributable to a distinct intervening cause without which the second injury would not have occurred, the first tort-feasor cannot be held liable for the subsequent injury whether or not the damage can be apportioned between the two injuries. Hashimoto v. Marathon Pipe Line Co., 767 P.2d 158 (Wyo. 1989); Watkins v. Hand, 253 N.W.2d 287 (Neb. 1977); Bruckman v. Pena, 29 Colo. App. 357, 487 P.2d 566 (Colo. 1971); McGuire v. Oliver, 227 So.2d 149 (La. App. 2d 1969).
Application of the above principles to the case at bar supports the circuit *33 court's refusal to grant instruction P-4(A). Instruction P-4(A) erroneously places upon Speed the burden of proving that Brake's disability can be apportioned between that caused by the collision with Speed and that caused by the subsequent injury in the September accident with Johnson.
We distinguish the instant factual scenario from the situation where one suffers from a pre-existing condition. In the latter case, one who injures another suffering from a pre-existing condition is liable for the entire damage when no apportionment can be made between the pre-existing condition and the damage caused by the defendant  thus the defendant must take his victim as he finds her. It is quite another thing to say that a tort-feasor is liable, not only for the damage which he caused but also for injuries subsequently suffered by the injured person.
Brake relies upon and asks this Court to find as dispositive of her issues the case of D & W Jones, Inc. v. Collier, 372 So.2d 288 (Miss. 1979). She contends that this case, which discusses in detail the law of joint and several liability, supports her theory that Speed and Johnson were co- or joint tortfeasors who were jointly and severally liable for the injuries of which she complains. The principles espoused in Collier are inapplicable to the case at bar.
There, a farming corporation operated commercial catfish producing lands at two locations in Washington County. It filed two suits in the circuit court of that county against several defendants for damages resulting from killing or contaminating fish in the ponds through the use of poisonous agricultural chemicals applied by the farmers and their crop duster agents. The corporation contended that joint and several liability rested on each farmer in each case for an indivisible injury.
On appeal, this Court agreed. The Court reasoned that
[T]he damage and injury to appellant's property was a gradual process over a period of several weeks... . Probably ... the application of the poison by any one [farmer] would not have been sufficient to contaminate the fish, but the combined applications of two, three or more [farmers] were sufficient to cause the resulting damage. The [farmers] knew, or by the exercise of reasonable care should have known of [the corporation's] catfish operations, the toxic effect of the application of agricultural poison on the fish and that all the [farmers] were or had been, making the applications of poison.
Collier, 372 So.2d at 294. Thus, the Court held that the "separate, concurrent, and successive negligent acts of the [farmers] which combined to proximately produce the single, indivisible injury to [corporation's] property ... rendered [farmers] jointly and severally liable." Id.
Collier is distinguishable from the instant situation because in that case, there existed no means of identifying the primary tort-feasor causing the single injury; it involved distinct acts of negligence working together at the same time to cause a single injury, whereas in the instant case, the second injury was attributable to a distinct intervening cause  Johnson's negligence  thus, stopping Speed's liability. Additionally, for all intents and purposes, the successive applications of the poison, were concurrent and there was no way to apportion the damage.
In sum, given the law established by this Court in Blizzard and Prisock, concerning successive accidents, unrelated in time, place, or parties, the circuit court properly refused instruction P-4(A). Speed cannot be held liable for injuries occurring as a result of Brake's subsequent collision in September involving Johnson.

IV.
Brake contends that the court erred in allowing the defendant to present into evidence documents from plaintiff's lawsuit against Johnson. She states that the court's refusal to properly instruct the jury on the issue of proximate cause and joint and several liability as presented in its instruction P-4(A) while allowing evidence of her claim against Johnson was highly prejudicial and confused the jury. Brake *34 couches her argument as an evidentiary violation resulting from an abuse of discretion. Specifically, she argues that the court abused its discretion by permitting the jury to hear evidence that she had made two claims for the same injuries and expenses against two different tortfeasors.[3] Speed responds that Brake bases her argument on a misconception of joint-, co-tortfeasors and joint and several liability and that she waived this contention when she chose to proceed in separate lawsuits for the same elements of damage.
We are mindful that Rule 403 of the Mississippi Rules of Evidence imbues the trial court with discretion in admitting or refusing to admit evidence. Though relevant, evidence may be excluded if its probative value is outweighed substantially by its unfair prejudicial effect.
The court did not abuse its discretion in permitting Speed to show that Brake had made the same claims in her suit against Johnson. It was incumbent upon Brake to prove that her injuries were caused by Speed. Speed, on the other hand, had the right to show that she was not responsible for Brake's injuries. She could seek to show that Brake's injuries resulted from activities for which she (Speed) was not responsible. In so proving, it was not improper for Speed to rely upon Brake's sworn statements in another lawsuit, alleging that Johnson caused and was responsible for the same injuries she claimed were caused by Speed.
This issue is without merit.

V.
Brake argues that the court erred in denying her motion for a new trial on the issue of damages. She contends that the verdict was the product of bias, passion and prejudice as is evidenced by the verdict which represents an amount which is less than half of her medical expenses.
The trial court before altering a jury award must find, pursuant to Miss. Code Ann. § 11-1-55 (Supp. 1990) either (1) that the jury's verdict is so shocking to the conscience that it is the product of bias, passion and prejudice on the part of the jury or (2) that the verdict was contrary to the overwhelming weight of credible evidence. It should determine, before allowing an additur to a jury verdict for damages, that the jury verdict was so inadequate under the facts in the case as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous and such as to manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption. Standard Products, Inc. v. Patterson, 317 So.2d 376 (Miss. 1975). Mississippi State Highway Commission v. Antioch Baptist Church, 392 So.2d 512 (Miss. 1981); Gibbs v. Banks, 527 So.2d 658 (Miss. 1988) (additurs should never be employed without great caution); City of Jackson v. Ainsworth, 462 So.2d 325 (Miss. 1984); Toyota Motor Co. v. Sanford, 375 So.2d 1036 (Miss. 1979); Biloxi Electric Co. v. Thorn, 264 So.2d 404 (Miss. 1972).
A jury verdict is not lightly to be set aside, and in no case is it permissible for a judge, merely because he feels that more or less should have been awarded, to substitute his judgment for that of the jury. In actions in the circuit court, the verdict of the jury is not simply advisory.
Toyota Motor Co., 375 So.2d at 1038-39.
Turning to the case at bar, the court did not err in failing to grant an additur. The jury verdict was not so shocking or unsupportable in evidence to lead one to think that the verdict was a result of prejudice. First, it was incumbent upon Brake to prove by a preponderance of the evidence that her injuries were attributable to the accident with Speed. Blizzard 193 Miss. at 493, 10 So.2d 343. The jury after hearing all of the evidence in the case, returned a verdict in favor of Speed and assessed her damages at $5,600. On the *35 facts presented to the jury, that verdict is not without support.
The evidence showed that after the first accident Brake drove away and Dr. Netherland stated that immediately preceding the second accident, she had recovered considerably and had no complaints of pain in either her neck or back; however, after the second accident, Brake was transported to the hospital in an ambulance, and underwent a series of diagnostic tests.
Applying familiar principles of tort law, where a second injury is a direct product of a distinct intervening cause, the first tort-feasor cannot be held liable for the subsequent aggravation or re-injury. Thus, Speed was not liable for the services rendered after the September collision which Brake could not distinctively relate to her negligence.
Analyzing the elements of damage before the jury does not lead one to conclude that the verdict as a result of prejudice or bias. Dr. Netherland testified that his total bill for services rendered from March 10, 1986, to the date of trial was $4,237. From March 7, 1986, to September 18, 1986, Dr. Netherland charged $1,830 for services rendered; other medical expenses totalled $925.45.
After the collision involving Speed, Brake drove home. Whereas, after the second accident, she was placed on a stretcher and transported to the hospital by ambulance. Also, after the first accident, Brake only sought chiropractic treatment, but after the second, she underwent a series of diagnostic tests in addition to chiropractic treatment, as well as visits to medical doctors.
Perhaps the most significant testimony came from Dr. Netherland, the chiropractor who treated her following the first accident. He stated that before the second accident, Brake had recovered considerably and on the three visits immediately preceding the September collision, she had no complaints of neck pain and her condition was generally improved. Furthermore, the medical doctors, Dr. Wiggins and Dr. McCloskey, who testified on Brake's behalf, stated that they only saw her after the accident in September; during the time after the first collision and before the second, they did not know what her condition was. Neither doctor knew the severity of either accident.
Brake produced no documentation from Watch-It Publications verifying employment or rate of pay. In fact, the only documentary evidence she presented that she had worked, at some point, was a 1983 1040A Individual Income tax return which showed that her gross income for 1983 was $1,429 from employment as a waitress. Thus, the jury may not have credited her testimony concerning her loss of wages, choosing instead to award damages for pain and suffering and medical expenses.
It was incumbent upon Brake to show that Speed lawfully caused all of her injuries. This, she failed to do. The jury awarded Brake $5,600 for injuries caused by Speed. This result is defensible on the record. Brake's contention that she is entitled to an additur is without merit.

VI.
Finally Brake contends that the court erred in failing to hold a hearing to determine if the jury was improperly influenced.
Substantively, this issue is governed by Rule 606(b) of the Mississippi Rules of Evidence which provides,
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was properly brought to bear upon any juror. Id.

Rule 606(b) prohibits a juror from impeaching a jury verdict except when certain *36 outside influences are involved. Tanner v. United States, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). Jurors are not competent as witnesses when called to testify concerning events which allegedly occurred during jury deliberations. Salter v. Watkins, 513 So.2d 569 (Miss. 1987).
On the other hand, a juror is competent to testify `on the question whether extraneous prejudicial information was improperly brought to the jury's attention.' He may testify regarding specific, extra-record facts another juror disclosed in the jury room and urged his fellow jurors to consider. (citation omitted) Where such extra-record facts affect an issue of importance in the case and are qualitatively different from the evidence properly before the jury, a new trial may be ordered. (citation omitted).
Id. at 571.
During the course of the presentation on motion for new trial, counsel for Brake related to the court conversations that he had had with jurors concerning jurors who thought they saw Brake playing with her grandchild during one or more recesses during the course of the trial; he also related a report that one of the jurors expressed a belief that that juror had seen Brake play golf prior to the trial. Counsel asserted that Brake scrupulously avoided any activities at the court house that might be construed as inconsistent with her alleged injuries and that she did not play golf and did not even know the location of the golf course where she was allegedly seen. Expressing reluctance to secure affidavits from the jurors without court approval, because of the provisions of Rule 606, Brake asked the court for permission to secure affidavits or, in the alternative, to conduct a hearing to inquire whether these matters improperly influenced the verdict.
Speed resisted this request by contending that it was not a part of the motion for new trial as filed and that, because more than ten days had elapsed, the request appeared untimely. The court, expressing a reluctance to embark upon inquiries into the jury's verdict, declined to rule upon the matter, implicitly holding that the issue was not properly before the court in that it was not specifically set forth in Brake's motion for new trial. The court ruled adversely to Brake on those issues which were set forth in the motion. Brake filed no separate motion with regard to the outside influence issue pursuant to Rule 59 or 60.
Nothing in Brake's written motion for new trial can be construed as bringing forth an issue of improper influence or conduct on the part of a juror. While Brake did allege in the motion that the verdict was against the overwhelming weight of the evidence and that the motion was grounded upon such reasons as may be put forth at a hearing, this general language affords her little relief. Our rules require more particularity. Miss. R.Civ.Pr. 7(b)(1). Brake does not suggest that she did not have the information within ten days of the entry of judgment. Counsel indicated only that he felt constrained by uncertainty as to the ethical propriety of securing affidavits from the jurors. He did not attempt to explain why he did not seek guidance or relief prior to filing the motion for or indeed, prior to the hearing on the motion for new trial.
Counsel's reluctance to transgress ethical rules regarding contact with jurors does not quite justify his failure to do more, especially in light of the fact of his failure to seek the guidance of the court. There is no general prohibition against contact with jurors after they have been discharged. We are aware that some districts have local rules or practices preventing or inhibiting such contact but there is no indication in the record that the court here involved has such a rule. See Lawson v. State, 573 So.2d 684 (Miss. 1991).
Our Rules of Professional Conduct provide only that "a lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person, or use methods of obtaining evidence that violate the legal rights of such person." Mississippi Rules of Professional Conduct Rule 4.4 (1991). That rule encompasses the more specific former provision, Mississippi Code of Professional Responsibility *37 DR 7-108(d) "after discharge of the jury ... the lawyer shall not ask questions of or make comments to a member of that jury that are calculated merely to harass or embarrass the juror." RPC Rule 4.4, Code Comparison. No provision prevents a lawyer from talking to a juror or securing affidavits from jurors to the effect that an "outside influence" was brought to bear. Miss.R.Evid. 606(b). Thus, Speed is correct on her timeliness objection as to Rule 59.
Although Brake made no request to amend her motion, a word about the power of the court in this regard is in order. Rule 59(d) empowers the court to grant a motion for new trial on its own initiative for any reason for which it might have granted new trial at the request of a party. Additionally, that subsection of the rule provides that, after giving notice and opportunity to be heard to the parties, the court may grant a motion for new trial on a ground other than those suggested by the moving party. Miss.R.Civ.Pro. 59(d).
Absent from the rule, however, is any provision allowing an amendment to a Rule 59 motion. This is not an oversight. In the process of amending the federal rule upon which our rule is based in order to insure the powers of the court enumerated above, a provision allowing a party to amend which was contained in the original draft was eliminated. II Charles A. Wright and Kenneth A. Graham, Jr., Federal Practice and Procedure, § 3813 (1973), citing, 34 F.R.D. 325, 404-405 (1964) (preliminary draft). It is suggested that an same amendment can be accomplished in effect by a movant urging the court to exercise its power to grant the motion a ground not alleged.
We must recall that here we are not dealing with a ground for new trial unalleged but demonstrable on the record. We are dealing with allegations and a denied opportunity to further explore those allegations. Technically, then, the court's power to grant new trial on an unalleged ground is not invoked. What is at issue is whether the court abused its discretion in ruling on the motion that was before it and refusing plaintiff's ore tenus request for relief on issues not contained in the motion. Bearing in mind that all Rule 59 motions call upon the court to strike a balance between the competing values of finality of judgments and a fair opportunity to achieve more perfect justice the discretion of the trial court is quite broad and its decisions entitled to much deference. Clark v. Columbus & Greenville Railway Co. 473 So.2d 947 (Miss. 1985); Miss.R.Civ.Pro. 59. We cannot say that, under the circumstances here, there was an abuse of discretion.
The trial court's action in denying the motion for new trial did not necessarily end all possibility of inquiry in the trial court. Brake could have sought relief on his issue pursuant to Rule 60. No such motion has been filed and ruled upon for purposes of this appeal. It follows that the issue of improper jury influence is not before this Court.
We need not reach the question then whether the information in question would justify a new trial under the standards that we have enunciated in Crawley v. Illinois Central Railroad Co., 248 So.2d 774, 777 (Miss. 1971). The information in question, especially the belief that the plaintiff was seen playing golf, is information sufficient to meet the "outside influence" threshold. That is, it does not matter that information outside the record is provided by a fellow juror as opposed to some other person. Id.; See also, State v. Johnson, 445 N.W.2d 337, 341 (Iowa 1989); Hard v. Burlington Northern R.R., 812 F.2d 482, 486 (9th Cir.1987). If the information is outside the record of proceedings in open court, it is an outside influence under the rule.
In Crawley we considered jurors who deliberately violated the orders of the court and inspected the scene of the accident to determine the quality of the view. We emphasized that the activity was not "casual, or of such a nature as not to be calculated to influence the jury" because the subject of the inspection touched on the predominant issue in the case. 284 So.2d at 777.
*38 It should be readily apparent, however, that it is the nature of the information acquired and its relation to material issues in the case which controls, no matter whether the information was accidentally, casually or deliberately acquired. The question in the instant case would be whether it rises to a level sufficient to order a new trial. In light of the fact that the question before the jury here was not what plaintiff's present condition was but which accident caused that condition, this issue is especially problematic. It is a determination that we should not attempt to make in the absence of a judgment by the trial court.
For the foregoing reasons, the judgment of the circuit court is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
McRAE, J., dissents.
NOTES
[1] Thus, Speed rear-ended Brake  how else could it have happened?!
[2] By totalled Brake explained,

As I was driving, [the car] was falling apart... . The exhaust pipe fell, was falling, the door was coming open, and it was  I couldn't even put it in park... . The rear bumper was pushed in and into the gas tank; approximately two inches it lacked going into the gas tank.
[3] This is not a case in which evidence of a settlement was admitted. See Whittley v. City of Meridian, 530 So.2d 1341 (Miss. 1988). Here, the court was careful not to admit such evidence. What was admitted was evidence that Brake had filed suit against another driver in a subsequent accident claiming injuries similar to those claimed against Speed.