¶ 1. On March 31, 1994, Shaun Boggs was the driver of an automobile that was in an accident with an automobile driven by Pam Hawks. The automobile driven by Hawks rear-ended the automobile driven by Boggs. Since Boggs was a minor, his parents filed a complaint on his behalf which sought to recover damages for medical expenses regarding Boggs's alleged personal injuries in relation to his accident with Hawks, as well as requesting compensation for his pain and suffering. Boggs presented evidence that stated he had incurred medical bills in the total sum of $6,336.91. The jury returned a verdict in Boggs's favor and awarded him damages in the total amount of $400. Boggs filed a motion for new trial regarding damages or in the alternative an additur. The trial court denied Boggs's motion for new trial and additur. Boggs filed a timely appeal from the trial court's denial of his motion and asserted the following issue: Whether the trial court abused its discretion when it denied his motion for additur or new trial on damages. We find this issue to have merit and award an additur in the total sum of $6,224.
 FACTS
¶ 2. On March 31, 1994, on an extremely foggy morning, the automobile that was driven by Pam Hawks collided with the rear-end of the automobile that was driven by Shaun Boggs. There was testimony that at the time Hawks's automobile collided with the automobile driven by Boggs, her speed was fifty-five miles per hour. However, at trial Hawks did not recall her speed at the time of the accident or that she had told anyone that she was traveling fifty-five miles per hour immediately preceding the accident. Instead, Hawks testified that she thought her speed was somewhere between thirty and forty miles per hour. Boggs and Hawks both exited their automobiles without physical assistance. Nonetheless, the testimony revealed that *Page 1084 
neither vehicle was driven away from the accident scene. There was testimony that both were "shaken" by the accident. Boggs and Hawks both received medical treatment as a result of this accident. Of primary concern is the medical treatment that was received by Boggs after the accident with Hawks. Additional facts will be discussed subsequently in this opinion.
 DISCUSSION
¶ 3. The following issue was presented by Boggs:
 WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED HIS MOTION FOR ADDITUR OR NEW TRIAL ON THE ISSUE OF DAMAGES.
¶ 4. Boggs argues that the trial judge erred when he did not grant an additur or motion for new trial on the issue of damages only because he had presented medical bills which totaled $6,336.91 as a result of this accident. Miss. Code Ann. § 11-1-55 (Rev. 1991), grants the trial judge the authority to grant an additur and provides:
 The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the fact was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of the credible evidence. . . .
Boggs continues his argument, asserting that since his medical bills totaled $6,336.91 and the jury returned a verdict in the amount of $400 it was "so inadequate as to be against the overwhelming weight of the evidence." Hawks rebuts this argument and contends that the jury verdict and denial of an additur or motion for new trial on damages were appropriate because the jury weighs the credibility of witnesses. Additionally, the jury must have reached the conclusion that due to the evidence presented that Boggs was not "seriously injured."
¶ 5. When this Court reviews whether the trial judge erred in denying a motion for additur we are limited to an abuse of discretion standard of review. Maddox v. Muirhead, 738 So.2d 742 (¶ 5) (Miss. 1999) (citing Rogers v. Pascagoula Public School District, 611 So.2d 942, 945 (Miss. 1992)). Our focus as an appellate court is whether the trial judge abused his discretion in denying the motion for additur, not upon the jury's action in awarding damages. McNair Transport, Inc. v. Crosby,375 So.2d 985, 986 (Miss. 1979). The party who is requesting an additur bears the burden of proving injury and other damages. Maddox, 738 So.2d at (¶ 5). The evidence must be reviewed in the light most favorable to the party against whom additur is sought and must give him/her the benefit of all favorable inferences reasonably drawn therefrom. Id.
"Awards set by [a] jury are not merely advisory and generally will not be `set aside unless so unreasonable as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.'" Id. (citing Rogers, 611 So.2d at 945). "Additurs represent a judicial incursion into the traditional habitat of the jury, and therefore should never be employed without great caution." Id. (quoting Gibbs v. Banks,527 So.2d 658, 659 (Miss. 1988)).
¶ 6. Though stated differently, the standards for overwhelming weight of the evidence and whether the jury returns a verdict that is influenced by bias, prejudice, or passion are basically the same thing.Green v. Grant, 641 So.2d 1203, 1208 (Miss. 1994). Essentially, the standard for overwhelming weight of the evidence is objective. It requires trial courts to apply this standard by reference to applicable law on recoverable damages in relation to the evidence before them.Green, 641 So.2d at 1208. This Court may *Page 1085 
infer bias, prejudice, or passion by contrasting the amount of damages with the amount of the verdict. Green v. Grant, 641 So.2d 1203, 1209 (Miss. 1994); Pham v. Welter, 542 So.2d 884, 888 (Miss. 1989); James v.Jackson, 514 So.2d 1224, 1225 (Miss. 1987).
¶ 7. "Proof that medical, hospital, and doctor bills were paid or incurred because of any illness, disease, or injury shall be prima facie
evidence that such bills so paid or incurred were necessary and reasonable." Miss. Code Ann. § 41-9-119 (Rev. 1993). Therefore, the issue is not based entirely on the "seriousness" of the injury Boggs suffered as contended by Hawks but is based on whether it is fair, necessary, and reasonable. However, the opposing party may rebut necessity and reasonableness by "proper evidence" and then the question is for the jury. Jackson v. Brumfield, 458 So.2d 736, 737 (Miss. 1984).
¶ 8. "Each case involving the issue of an additur must `necessarily be decided on its own facts.'" Id. at 1208 (quoting Leachv. Leach, 597 So.2d 1295, 1297 (Miss. 1992)). Boggs submitted $140 in medical bills which were incurred during his treatment by his family physician, Dr. Patel. Boggs also presented medical bills from two ledger sheet balances which reflected the totals of $4,105.21 and $2, 093.70 for his treatment with Dr. Ramesh Gupta. Boggs asserts that his total medical bills equal $6,336.91. Miss. Code Ann. § 41-9-119 (Rev. 1993) dictates that Boggs's medical bills are prima facie evidence of their reasonableness; thus, for the verdict to stand Hawks must have submitted proper evidence to rebut these bills.
¶ 9. Although each case is decided on its own facts, we may receive guidance in making the determination of whether Boggs's medical bills were properly rebutted by reviewing previous Mississippi Supreme Court decisions. In Green v. Grant, 641 So.2d 1203, 1207 (1994) and Brakev. Speed, 605 So.2d 28, 35 (Miss. 1992), the supreme court held that proper evidence was presented to rebut the reasonableness and necessity of medical bills and other damages.
¶ 10. In Green v. Grant, 641 So.2d 1203, 1207 (1994), Green had requested $2,118.25 in medical expenses and lost wages of $1,330.58. The jury awarded her $2,000 in damages. The Mississippi Supreme Court held that the evidence of the reasonableness and necessity of Green's damages were refuted. The testimony of Green's prior emergency room physician regarding the accident in question was the most convincing testimony. The emergency room physician seriously contended the assertion that the medical expenses and loss of income claimed by Green as a result of the accident were reasonable or necessary. Brake v. Speed, 605 So.2d 28, 35 (Miss. 1992), is an additional case where the Mississippi Supreme Court held that the prima facie reasonableness of medical expenses was refuted with proper evidence.
¶ 11. In Brake, Brake was involved in two automobile accidents within a six-month time period. Brake attempted to collect damages from the driver of the first accident for injuries she claimed she sustained in said accident. Id. at 29. The damage award of $5,600 was held not to be so insufficient as to infer that the verdict was a result of bias, passion, or prejudice, and no additur was required in an action against a following driver from rear-end collision where Brake was involved in two accidents. Id. The supreme court made this determination by relying on the facts that there were different circumstances and treatments regarding each accident, and even more particular, the fact that the chiropractor treating Brake for the first accident stated that before the second accident Brake, "had recovered considerably and on three visits immediately preceding the September collision, she had no complaints of neck pain and her condition was generally improved." Id. at 35.
¶ 12. What is common in both Green and Brake is that there was testimony from a *Page 1086 
prior treating physician that strongly disputed the extent of injury related to the accident in question and the reasonableness and necessity of the additional treatment.
¶ 13. In the case at bar, Hawks attempted to question the extent of Boggs's damages by attempting to create inferences. Hawks presented those inferences by attacking the credibility of Boggs, his parents, and his treating physicians. Hawks testified that she departed the accident scene in an ambulance; however, she only had a large bruise on her hip from where she was wearing her seat belt. Hawks also elicited testimony that showed that Boggs was not driven from the accident scene in an ambulance. Additionally, Hawks relies on the fact that the testimony elicited from Boggs revealed he had no impact with the interior of the automobile when her automobile collided with his. The medical records reveal that Boggs had no cuts, bruises, or lacerations as a result of this accident. Boggs primarily complained of back and neck pains after his accident with Hawks. Nevertheless, Boggs presented testimony that went directly to why he had not departed the accident scene in an ambulance, and that although he did not leave in an ambulance, he still promptly received medical treatment.
¶ 14. Boggs explained that he did not leave the accident scene in an ambulance because there had been several accidents and the police officers were very involved with those accidents; nonetheless, he informed an officer that a friend was present at the accident scene and was taking him to his friend's house. Thereafter, on the day of the accident, March 31, 1994, early in the morning, Boggs's father retrieved Boggs and took him to be examined by Dr. Pravin Patel.
¶ 15. Boggs testified that on the day of the accident his "back was a little sore," but he had no other apparent problems. During the deposition testimony of Dr. Patel which was presented at trial, he explained that there were lower back spasms and that it was probably whiplash. Dr. Patel prescribed medication in the form of muscle relaxers to ease Boggs's pain. Boggs explained that later that same night, he woke up with "extreme pain" in his neck and lower back. The medical records of Dr. Patel reveal that Boggs returned to Dr. Patel's office for further treatment on April 5, 1994 and that Boggs was not only complaining of back pain but also complained that his neck hurt. Dr. Patel instructed Boggs to continue taking the muscle relaxers and prescribed and anti-inflammatory medication. Boggs had a third visit with Dr. Patel on April 13, 1994. Dr. Patel explained in his deposition that at this visit Boggs had a "hump" in the left side of his chest on his back and that spasms were still present. On May 4, 1994, Boggs did not stay long enough to see Dr. Patel. On May 5, 1994, Boggs still had spasms. Dr. Patel believed that these injuries and the pain explained by Boggs could be consistent with the rear-end accident that occurred on March 31, 1994. The May 5, 1994, visit was the last time Dr. Patel treated Boggs for complaints regarding his back and neck relative to the March 31, 1994 accident. In fact, Dr. Patel stated that he had seen Boggs on September 7, 1994, and he did not mention any pain or problems with this back. However, Boggs explained that he no longer mentioned his back and neck pain to Dr. Patel because he had informed him that "it would just take time to heal, and I just thought that was correct, just dealt with the pain." Boggs also used this explanation to justify why he had not presented himself for treatment with Dr. Gupta prior to October 8, 1994. Dr. Patel claimed that the medical bills were fair, reasonable, and necessary and totaled $140. The next time Boggs was treated for complaints regarding his neck and back relative to the March 31, 1994 automobile accident was on October 8, 1994, when he began treatment with Dr. Ramesh Gupta. *Page 1087 
¶ 16. Dr. Gupta, a rheumatologist, treated Boggs at the request of Boggs's mother, who had been a client of Dr. Gupta's for several years. As aforementioned, Dr. Gupta's treatment commenced on October 8, 1994 and continued through December 31, 1997. Dr. Gupta testified at trial through his deposition testimony. Dr. Gupta stated that Boggs came to him for treatment of his neck pain. The results of the initial exam showed a moderate restriction and pain. Dr. Gupta classified the restriction as a 1+ restriction in extension and lateral flexation of the spine and prescribed anti-inflammatories. Dr. Gupta classified this restriction as "mild." Eventually, Dr. Gupta diagnosed Boggs with post-traumatic arthritis. This remained Dr. Gupta's diagnosis throughout Boggs's treatment. Dr. Gupta explained he would interpret the pain that Boggs complained of as being related to the rear-end automobile accident with Hawks because there were no signs of other inflammatory disorders. Dr. Gupta testified that his bills were reasonable and necessary and in line with similar qualified physicians. Thereafter, Hawks presented the video deposition of another rheumatologist, Dr. Jane Alissandratos, to rebut the diagnosis of Dr. Gupta.
¶ 17. Dr. Alissandratos stated that she had reviewed Boggs's medical records commencing September of 1993 through December of 1997 that were generated as a result of Boggs's treatment with Dr. Patel and Dr. Gupta. Dr. Alissandratos indicated that the results of the examinations that were documented within Boggs's medical records were inconsistent with the symptoms for post-traumatic arthritis. Dr. Alissandratos conceded that she had not personally examined Boggs and had not viewed any of the x-rays that had been taken regarding Boggs condition. It is also important to note that Dr. Alissandratos did not dispute that Boggs was in pain or that his treatment was not fair, necessary, or reasonable.
¶ 18. Hawks also attempted to attack the validity of Boggs's claim for his medical bills and pain and suffering by referring to additional automobile accidents which Boggs had been involved in due to the fact that the injuries sustained in the other accidents appeared more severe and required hospitalization. Boggs explained that the symptoms he had experienced from the automobile accident prior to March 31 had different symptoms and had resolved months prior to the March 31 accident. There was no other testimony that directly refuted this statement. Furthermore, Boggs and his mother testified that the accident with Hawks had limited his previous activities such as swimming, playing soccer, spending time with his friends, and continuing to assist his father with the renovation of a house. Furthermore, Hawks points to the fact that Dr. Gupta was not informed of the accident prior to March 31; however, little else was developed on this point. Hawks also questioned Dr. Gupta about whether the impact of a subsequent automobile accident which occurred on April 19, 1996, altered Boggs's condition from the March 31 accident with Hawks. The testimony of Dr. Gupta did not reflect that Boggs's condition had considerably improved from the date of initial treatment on October 8, 1994, to the subsequent accident in April 1996. Dr. Gupta was also asked whether the April 1996 accident seemed to bring about a change in Boggs's condition. Dr. Gupta responded that gradually he observed that the thoracic and lumbar portions of the spine were getting involved, but he did not know what contributed to this since he had not seen him immediately after the April 1996 accident.
¶ 19. We determine that Hawks failed to rebut the reasonableness of Boggs's medical bills. Hawks relied on speculation and attempts to attack the credibility of the witnesses. However, Hawks failed to present any testimony that showed that the medical bills were neither fair, reasonable, nor necessary. Unlike the aforementioned cases of Green andBrake, we lack *Page 1088 
the strongly convincing testimony, in particular that of a doctor, to rebut that the medical bills that were presented were not reasonable and necessary. When comparing the $400 verdict with the $6,336.91 in medical bills Boggs submitted during the trial we infer that the verdict was the result of bias, passion, and prejudice. We also find that the verdict in the amount of $400 was against the overwhelming weight of the evidence. The jury found that the defendant was negligent and that Boggs had suffered an injury. The evidence that was presented by Boggs in support of his claim for damages justifies an award in excess of $400. The trial court erred and abused its discretion when it did not grant Boggs's motion for new trial on damages or additur. However, we determine that plain error occurred in arriving at the sum of $6,336.91 which is asserted by Boggs to reflect the medical bills incurred for his treatment.
¶ 20. The amount of Boggs's medical bills should instead reflect the total balance of $6,224. This is so because we find that an error occurred when Boggs simply added the two ledger balances for Dr. Gupta's billings. Instead, it appears that the ledger balance that reflects the balance of $2,093.70 which we will refer to as ledger number two, simply restated those charges contained within ledger number one which shows the final balance of $4,105.21. Instead, the better approach is to add all of the bills incurred for Dr. Gupta's office visits as they appear within ledger number one. When we add the sums charged for the office visits contained within this first ledger we derive a total amount of $6,084. Thereafter, we add $6,084 with the total of $140 for Dr. Patel's treatment in this accident and reach the figure of $6,224. We acknowledge that this issue was not raised on appeal and usually when an issue is not raised on appeal it is barred. However, this Court will acknowledge an issue that has not been assigned as error when plain error has occurred in the trial court proceeding. Tower Loan of Mississippi, Inc. v. Jones,749 So.2d 189 (¶ 11) (Miss. Ct. App. 1999). In Tower Loan this Court stated:
 [The] Supreme Court Rule 28(a)(3) states that this court may notice a plain error not identified or distinctly specified. This Court will ignore this requirement for preservation on appeal when a substantial right is affected. This Court retains the power to notice plain error. Miss. R. Evid. 103. The plain error doctrine reflects a policy to administer the law fairly and justly.
Id.
¶ 21. In light of this error, we order an additur in the total sum of $6,224 to compensate Boggs for his medical bills incurred from his treatment with Dr. Patel and Dr. Gupta. From the balance of $6,224, we allow for the deduction of the total sum of $901 which allows a credit to State Farm for its previous payments toward this claim on behalf of Hawks. Hawks may accept the additur, or this case will be remanded for a new trial on damages only.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF TATE COUNTY IS AFFIRMEDON THE CONDITION OF ACCEPTANCE OF ADDITUR OF $6,224 BY HAWKS. ALLCOSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, P.J., BRIDGES, IRVING, MYERS, AND PAYNE, JJ., CONCUR. MCMILLIN,C.J., DISSENTS WITH A SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK,P.J., MOORE, AND THOMAS, JJ.