KITCHENS, Justice,
dissenting.
¶ 34. I dissent in the instant case to express my respectful disagreement with the majority’s affirmance of the trial court’s judgment. I agree with the Court of Appeals’ decision to reverse and remand for a new trial on damages.
¶ 35. Dr. Martin, Thompson’s primary care physician, testified that Thompson had presented to his office four days after the accident complaining of neck and shoulder pain. Thompson had an abrasion that was the result of seat belt trauma. Dr. Martin testified that his diagnostic impression of Thompson had included cervical pain, a concussion, and a chest wall contusion. Thompson’s cervical pain was *241 treated with heat and ultrasound. She continued to experience neck pain and insomnia a month after the accident. Dr. Martin prescribed medication for pain, as well as Soma for muscle spasm, and continued to apply heat and ultrasound to the cervical spine. He referred Thompson for physical therapy. An April 2002 MRI showed degenerative disc disease associated with small posterior disc bulges at the C5-C6 and C6-C7 levels of the cervical spine. Dr. Martin testified that Thompson continued to experience headaches, migraine headaches,[14] insomnia, depression, neck pain, and continued with physical therapy. She was prescribed cortisone and xylocaine injections, an antidepressant, and migraine medication. This course of treatment continued more than two years after the accident. Dr. Martin testified to a reasonable degree of medical probability that Thompson’s cervical disc injuries were either caused or aggravated by the March 2002 accident.
¶ 36. Ann Godfrey, Thompson’s treating physical therapist, testified that Thompson’s injuries were consistent with her having been hit from the rear in an automobile accident. She testified to a reasonable degree of medical certainty that Thompson’s injuries were caused by the March 2002 collision with Nguyen.
¶ 37. Ruth Bosarge, another of Thompson’s treating physical therapists, declined when asked to testify regarding causation, but did testify that Thompson’s symptoms and injuries were consistent with those of one who had been involved in a rear-end automobile accident.
¶ 38. Dr. Kesterson, Thompson’s treating neurosurgeon, who performed the October 2005 surgery on the discs in Thompson’s cervical spine, opined that the degeneration of the discs had not been caused by the automobile accident. However, Dr. Kesterson testified that, since she was asymptomatic before the accident, and had neck pain only after the accident, then there was a reasonable medical probability that Thompson’s symptoms were attributable to the accident. According to Dr. Kesterson, eventually Thompson’s injuries and the associated pain made surgery medically necessary.
¶ 39. The defense did not adduce any expert testimony. Its sole witness was Nguyen, who conceded liability. Thus, the uncontroverted expert testimony was that, while Thompson may have had a pre-exist-ing degenerative disc condition, the accident aggravated her condition such that Thompson experienced significant and protracted pain and other associated symptoms as a result of the automobile accident at issue. Thompson adduced evidence that she had incurred $234,316.49 in medical expenses associated with the injuries that she contended had been caused by the accident, which included the surgery to repair the discs performed by Dr. Kester-son, and the associated hospital stay. The jury, however, awarded a general verdict in the amount of $9,131, the exact amount of Thompson’s medical bills for her physical therapy at Physical Therapy Solutions.
¶ 40. “One who injures another suffering from a pre-existing condition is liable for the entire damage when no apportionment can be made between the pre-exist-ing condition and the damage caused by the defendant-thus the defendant must take his victim as he finds her.” Blake v. Clein, 903 So.2d 710, 730 (Miss.2005) (quoting Brake v. Speed, 605 So.2d 28, 33 (Miss.1992)). The defense adduced no evidence to contradict Thompson’s experts, *242 all of whom opined that Thompson’s preexisting condition was asymptomatic prior to the accident. Thompson’s treating physicians opined that the accident aggravated her condition to such a degree that she required surgery to repair discs in her cervical spine. Since no apportionment could be made, Nguyen should have been held liable for the entire damage.
¶ 41. “A motion for a new trial may be granted in several circumstances including where faulty jury instructions have been given, where the verdict is against the overwhelming weight of the evidence, or where bias, passion or prejudice have tainted the jury’s verdict.” Davis v. Wal-Mart Stores, Inc., 724 So.2d 907, 910 (Miss.1998) (citing Daniels v. Wal-Mart Stores, Inc., 634 So.2d 88, 94 (Miss.1993); Kitchens v. Mississippi Ins. Guar. Ass'n, 560 So.2d 129, 132 (Miss.1989)). “Generally, ‘the only evidence of corruption, passion, prejudice or bias on the part of the jury is an inference, if any, to be drawn from contrasting the amount of the verdict with the amount of the damages.’ ” Green v. Grant, 641 So.2d 1203, 1209 (Miss.1994) (quoting Biloxi Electric Co., Inc. v. Thorn, 264 So.2d 404, 406 (Miss.1972)).
¶ 42. The Court of Appeals found that the verdict, in light of the evidence adduced at trial and the actual damages incurred by Thompson, warranted a new trial. “[W]e find the jury’s award to be unreasonable. The jury’s award was less than four percent of Thompson’s actual medical expenses, and the evidence seems to support Thompson’s argument that the jury failed to include damages for pain and suffering.” Thompson v. Dung Thi Hoang Nguyen, 2002 WL 34591654, *5 (Miss.Ct.App. February 1, 2011).
¶ 43. I agree with the sound reasoning of the Court of Appeals in the instant case. I would reverse the trial court judgment and remand this case for a new trial on the issue of damages.
PIERCE, J., Joins This Opinion.

. Thompson suffered of migraine headaches prior to the accident and did not contend that they were caused or aggravated by the collision.