BRIDGES, J.,
for the Court.
¶ 1. This case comes from the Circuit Court of Jackson County, Honorable Dale Harkey presiding. Cynthia Clark sued Mark Deakle for damages resulting from a car wreck which occurred on January 24, 1997. There was no question at trial as to whether Deakle was liable; the only triable question was damages. The jury returned a damages award of twelve thousand dollars. Clark filed a motion seeking an additur or a new trial, which the trial court denied. Clark appeals the trial court’s denial and brings three issues:
I. WHETHER THE TRIAL COURT ABUSED HIS DISCRETION IN NOT GRANTING THE PLAINTIFF’S MOTION FOR ADDITUR OR IN THE ALTERNATIVE A NEW TRIAL BECAUSE THE JURY CLEARLY EVIDENCED BIAS, PREJUDICE AND/OR PASSION IN AWARDING AN AMOUNT LESS THAN THE REASONABLE AND NECESSARY MEDICAL EXPENSES AND CORROBORATED, UNCONTESTED LOST WAGES.
2. WHETHER THE DENIAL OF THE PLAINTIFF’S MOTION FOR ADDITUR OR IN THE ALTERNATIVE A NEW TRIAL WAS AN ABUSE OF DISCRETION DUE TO THE FAILURE OF THE JURY TO AWARD ANY DAMAGES FOR PAIN AND SUFFERING.
3. WHETHER THE JURY EVIDENCED BIAS, PREJUDICE AND/OR PASSION IN ITS AWARD BY FAILING TO COMPENSATE THE PLAINTIFF FOR LOSS OF ENJOYMENT OF LIFE, THUS MAKING THE TRIAL COURT’S DENIAL OF PLAINTIFF’S MOTION FOR AD-DITUR OR IN THE ALTERNATIVE A NEW TRIAL AN ABUSE OF DISCRETION.
Finding no error, we affirm.
STATEMENT OF FACTS
¶ 2. On the morning of January 24, 1997, Cynthia Clark was driving her son and daughter to school. Clark was stopped at an intersection, when her Chevy Cavalier was struck from behind by a Ford F-150 pick-up truck driven by Mark Deakle. Deakle got out of his truck and walked to Clark’s car to see if anyone was hurt. They agreed to pull over to a nearby parking lot. Clark claimed her head was hurting, but no ambulance was requested at the scene. Clark’s two children did not complain of any pain. A police officer arrived, and an accident report was completed. After the report was completed, Clark then drove her children to school and went to work.
¶ 3. At the time of the accident, Clark was employed by Trinity Glass as a secretary. Her husband, Daniel Clark, was the office manager. Clark testified that as the day went on, she began experiencing headaches which caused her pain. After work, Clark went to the emergency room at Ocean Springs Hospital with her children. Clark’s children checked out as healthy, but Clark complained of neck soreness. Clark’s neck X-ray was normal. Clark was diagnosed as having a cervical muscle strain with a headache. She was released form the hospital and was told she could return to work with no restrictions.
¶ 4. Four days after leaving the emergency room, Clark was still experiencing *1229 pain. Thus, Clark went to the Coastal Family Health Center four days after leaving the emergency room, where she was diagnosed with a right trapezius muscle strain, and was prescribed physical therapy. During her physical therapy, Clark missed some work. Clark completed the prescribed physical therapy and returned to Coastal Family Health Center for reevaluation. Clark claimed to have some pain, but it did not prevent her from exercising. Clark was ruled to have good range of motion and was released with no work restrictions on April 17, 1997. However, she quit her job the next day, claiming she was unable to continue working because of the pain.
¶ 5. Clark then began to see a chiropractor by the name of Dr. Don Hembree. Dr. Hembree diagnosed Clark with recurring neck pain, headaches, mid and lower back pain, and dizziness. Hembree pursued several treatments, and eventually some improvement was made in Clark’s condition. Hembree ended his treatment of Clark on June 19,1997.
¶ 6. In September of 1997, Clark returned to Coastal Family Health Center complaining of pain. She was referred to Dr. Robert Terrell, an orthopaedic specialist. Dr. Terrell diagnosed Clark as having a C5-C6 bulging disc with cervical pain. Terrell prescribed more physical therapy. Terrell did not believe Clark was a candidate for surgery and released her from his care on December 4,1998. Sometime during this treatment, Clark began working half days at Trinity Glass, but she quit because the pain would no longer allow her to work as a secretary.
¶ 7. During her period of treatment with Dr. Terrell, Clark obtained a job in the summer of 1998 with Hubbard Commercial Mowers, a landscaping business. Clark had been unemployed since she quit her job at Trinity Glass in April of 1997. Clark’s duties included trimming hedges and pulling weeds. Complaining of pain, Clark quit this job after about two months. Clark submitted an application for employment to the unemployment office, and this was her last attempt at finding employment.
¶ 8. In October of 1998, Clark began doing housekeeping work for a man named Tommy Cooley. Clark testified she did the work to receive a little cash. Clark divorced her husband, Daniel Clark, in November of 1998. She filed for the divorce on the grounds of habitual cruel and inhuman treatment, alleging her husband hit her fifteen years prior, screamed at her, and acted erratically. She married Cooley in December of 1998.
¶ 9. Clark was involved in another automobile accident on December 16, 1998. The circumstances surrounding this accident were similar to those surrounding Clark’s first accident, except this time Clark was taken to the hospital in an ambulance. Clark was treated for her neck and back. Clark did not seek any treatment from the second accident because the pain was the same as it had been. The only new maladies resulting from the second accident was loss of balance and dizziness. Clark’s last reported trip to a doctor took place on January 8, 1999, when she visited Dr. Terrell.
¶ 10. Alleging she still suffered pain from the first accident, Clark filed suit against Deakle on January 28, 1999. Liability was not at issue during this trial; only damages were at issue. At trial, Clark offered $11,488.45 in medical bills into evidence. Clark also offered a document prepared by her first husband indicating lost wages totaling $1320 for her time at Trinity Glass. Clark claimed the accident cost Clark her first marriage. She claimed that after the accident, she *1230 was unable to do simple housework, and this strained her marriage.
STATEMENT OF LAW
STANDARD OF REVIEW
¶ 11. “In reviewing a trial court’s grant or denial of an additur, this Court’s standard of review is limited to an abuse of discretion.” Pickering v. Industria Masina I Traktora (IMT), 740 So.2d 836 (¶ 58) (Miss.1999). “We decide whether discretion was abused, not whether we would have granted or denied in the first instance.... Generally the jury’s decision will be upheld unless it was so unreasonable as to be outrageous.” American Nat’l Ins. v. Hogue, 749 So.2d 1254 (¶ 27) (Miss.Ct.App.2000).
ANALYSIS
1. WHETHER THE TRIAL COURT ABUSED HIS DISCRETION IN NOT GRANTING THE PLAINTIFF’S MOTION FOR ADDITUR OR IN THE ALTERNATIVE A NEW TRIAL BECAUSE THE JURY CLEARLY EVIDENCED BIAS, PREJUDICE AND/OR PASSION IN AWARDING AN AMOUNT LESS THAN THE REASONABLE AND NECESSARY MEDICAL EXPENSES AND CORROBORATED, UNCONTESTED LOST WAGES.
¶ 12. In raising this issue, Clark claims the trial court erred by affirming the jury’s verdict because the jury awarded an amount only slightly more than the total of the medical bills offered into evidence. Clark offered evidence of $11,488.45 in medical expenses and $1320 in lost wages. Clark argues the lost wages evidence was corroborated, and thus the jury was in error for failing to award her the total amount. Deakle counters by arguing there was a great deal of controversy as to the reasonableness of Clark’s medical expenses and there was dispute over the lost wages evidence Clark presented. Deakle also points out the applicable standard of review to be applied in these cases.
¶ 13. In regard to medical expenses, the Mississippi Code Annotated section 41-9-119 states “[pjroof that medical, hospital, and doctor bills were paid or incurred because of any illness, disease, or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable.” Miss.Code Ann. § 41-9-119 (Rev.1993). This presumption is rebuttable, however, to do so, more than speculation and credibility attacks must be offered. Boggs v. Hawks, 772 So.2d 1082 (¶¶ 7 & 19) (Miss.Ct.App.2000). In this case, there was no evidence offered to rebut the reasonableness of Clark’s medical bills. In fact, Clark offered a great deal of proof supporting the reasonableness of the $11,488.45 in medical bills she incurred. Because of this, the real question this Court must address is whether the jury and trial court erred in not rewarding the full amount of lost wages Clark claims she incurred due to her injuries: $1320.
¶ 14. While Clark testified she missed work because of her injury, the only piece of evidence offered in this case which gave a concrete amount of time Clark missed due to her injuries was a document drawn up by Clark’s ex-husband which was entered into evidence as Plaintiffs exhibit 17. This document listed the dates for which Clark missed both full days and half days at work, gave the total amount of hours (40) Clark worked a week, her hourly rate ($6 per hour), and was signed by her ex-husband. This document was entered into evidence during the time one witness was leaving the stand and another was taking the stand. No one testified as to the *1231 validity of the document. In other words, this document was not corroborated by testimony.
¶ 15. Clark claims Deakle simply tries to refute this document through speculation and conjecture to refute the legitimacy of these wages. Clark also points out Deakle failed to offer any evidence to refute this document. This may be so, but the fact is Clark did not offer any direct evidence to support the assertions made in this document. In cases such as this one, the jury acts as the ultimate fact finder. In this respect, this case is similar to the case of Maddox v. Muirhead, 738 So.2d 742 (¶ 8) (Miss.1999) where the appellant testified regarding lost wages, but offered no documentation proving the amount of lost wages. Id. In that case, the Mississippi Supreme Court concluded “[i]t is reasonable to conclude that the jury did not credit his testimony concerning lost wages and overtime.” Id. In the> same way, since this document was offered without any testimonial corroboration, it is reasonable to conclude the jury did not put much weight in Clark’s lost wage sheet. This idea is further supported by the fact the document was prepared by Clark’s ex-husband, who might have been considered an interested party. For this reason, we affirm the trial court’s holding as to this issue.
2. WHETHER THE DENIAL OF THE PLAINTIFF’S MOTION FOR ADDITUR OR IN THE ALTERNATIVE A NEW TRIAL WAS AN ABUSE OF DISCRETION DUE TO THE FAILURE OF THE JURY TO AWARD ANY DAMAGES FOR PAIN AND SUFFERING.
¶ 16. Clark argues that since the jury award was insufficient to cover both her medical expenses and lost wages, then the award was definitely -insufficient to cover her pain and suffering. Clark claims there was a great deal of testimony offered proving the pain and suffering with which Clark had to deal. Clark also points out much of this testimony was undisputed. Deakle states the testimony offered was in dispute, and it was often contradicted. Deakle claims this dispute requires this Court to give the jury’s finding even more deference.
¶ 17. As stated above, we do not believe the jury was in error for disregarding Clark’s evidence of lost wages. Because the jury award covers the $11,488.45 of medical bills, there is $511.55 of the jury award left out of the $12,000 verdict. Some of this excess money could therefore be considered the jury’s award for pain and suffering. This Court’s scope of review in dealing with an additur appeal is limited to a determination of whether the trial court abused its discretion. Rose v. Clenney, 748 So.2d 172 (¶ 12) (Miss.Ct.App.1999). Considering the standard of review, and the fact we must view the facts in a light most favorable to Deakle, then the $511.55 must be considered the jury’s award for pain and suffering. Boggs v. Hawks, 772 So.2d 1082 (¶ 5) (Miss.Ct.App.2000). Therefore, the jury did make an award for pain and suffering. The award does not strike this Court as unreasonable, and even though this amount may not be what this Court would have awarded, that is not how this Court views these cases. American Nat’l Ins., 749 So.2d at (¶ 27). Our job is simply to ask whether the trial court abused its discretion, and in this case it did not.
3. WHETHER THE JURY EVIDENCED BIAS, PREJUDICE AND/OR PASSION IN ITS AWARD BY FAILING TO COMPENSATE THE PLAINTIFF FOR LOSS OF ENJOYMENT OF LIFE, THUS MAKING THE TRIAL COURT’S DENIAL OF PLAINTIFF’S MOTION FOR AD- *1232 DITUR OR IN THE ALTERNATIVE A NEW TRIAL AN ABUSE OF DISCRETION.
¶ 18. In this issue, Clark claims the trial court erred in failing to award her an additur or new trial, because the jury did not compensate her for her loss of enjoyment of life. Clark points out all of the things she can no longer do, such as aerobics, going on long walks, swimming, etc. Clark also argues that because the injury kept her from performing certain household duties, it caused a strain on her marriage which ultimately led to a divorce. Deakle points out Clark has failed to prove the jury did not award her any of these damages, and also stresses the circumstances under which Clark’s divorce occurred. Deakle relies on the standard of review.
¶ 19. The Mississippi Supreme Court recently dealt with the topic of loss of enjoyment of life in the case of Kansas City Southern Railway Co., Inc., v. J.C. Johnson, 798 So.2d 374 (Miss.2001). In the Johnson case, the Mississippi Supreme Court held “[t]he loss of enjoyment of life should be fully compensated and should be considered on its own merits as a separate element of damages, not as a part of one’s pain and suffering.” Johnson at (¶ 23). The court also stated
This type of damage relates to daily life activities that are common to most people. There are numerous activities that courts have held constitute daily life activities: going on a first date, reading, debating politics, the sense of taste, recreational activities, and family activities .... Pain and suffering encompasses the physical and mental discomfort caused by an injury, such as anguish, distress, fear, humiliation, grief, shame, and worry.

Id.

¶ 20. In our case, the testimony did support the contention that Clark does daily deal with pain, but that is not what we must examine here. As stated above, we are to look at the daily life activities which Clark is unable to do because of her injury. After looking at the evidence in a light most favorable to Deakle, the evidence supports the view that Clark suffers from some pain in doing things like walking, jogging, etc. However, the medical evidence in this case indicates that Clark’s status did improve over time. Clark testified “[i]’m not saying that I am totally disabled, because I’m not. I can go to the beach right now and lay out. I can, you know, go to the baseball game and watch my kids now, but I can’t participate with them. I don’t hurt twenty-four hours a day.”
¶ 21. After examining the Johnson case and reading Clark’s testimony, this Court cannot find that the trial court abused its discretion by refusing to award Clark an additur. In the Johnson case, the court noted, in finding Johnson had suffered loss of enjoyment of life, that Johnson had suffered severe injuries such as bruised lungs, a cracked pelvis, and brain injury. The court also noted Johnson had to go to a speech therapist, physical therapist, and a rehab therapist. The degree of injuries suffered by Johnson is in a whole different league from the injuries suffered by Clark in this case. Clark is still able to enjoy the everyday facets of daily life and is only limited a small amount by her injury.
¶ 22. In addition, the contention that Clark’s marriage was ruined as a result of this accident carries very little weight. Clark was the party who filed for the divorce, and she did so on the grounds of habitual cruel and inhuman treatment going back some fifteen years in duration. Such a position underminds Clark’s claim that her marriage fell apart because she was no longer able to perform household chores. Clark’s position is weakened further by the fact Clark was performing *1233 these very same duties for a man she would marry as soon as her divorce was final. Because of the standard of review we apply in cases of additur, we affirm as to this issue.
CONCLUSION
¶ 23. The trial court did not abuse its discretion in refusing to grant Clark an additur or in the alternative a new trial. The jury award was not unreasonable as to shock the conscience and did not evidence bias. Moreover, the jury and the trial court were not in error for failing to award the amount of lost wages Clark claims she should have received. Even further, the jury and trial court were not in error for failing to award Clark more damages for pain and suffering and loss of enjoyment of life. We affirm.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS HEREBY AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ„ CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.