MYERS, J.,
for the Court:
¶ 1. On December 3, 1999, Joseph Thompson filed his complaint against George Gregory and the Lee County School District (“Lee County”), alleging that he suffered personal injuries as a result of the negligence of George Gregory in operating a Lee County school bus. On October 9, 2003, after a trial on the merits, the court dismissed George Gregory from the suit, but found Lee County liable to Thompson for the sum of $200,000. However, the court found Thompson to be fifty *123 percent contributorily negligent, thus reducing the total damage award to $100,000.
¶ 2. Aggrieved by the assignment of contributory negligence and by the amount of damages awarded, Thompson now appeals, raising the following two issues:
I. DID THE TRIAL COURT ERR IN FINDING THOMPSON TO BE FIFTY PERCENT CONTRIBUTORILY NEGLIGENT?
II. DID THE TRIAL COURT ERR IN DETERMINING THE AMOUNT OF DAMAGES?
¶ 3. Finding error in the assignment of contributory negligence, we reverse and render on that issue, and further, finding error in the amount of the damage award, we reverse and remand for a new trial on the issue of damages.
FACTS
¶4. On December 4, 1998, Thompson was driving his red truck in the northbound lane of Romie Hill Road, a two-lane road in Shannon, Mississippi. As Thompson approached the intersection of Romie Hill Road and County Road 300, the school bus driven by Gregory pulled out in front of Thompson, causing a collision between the two vehicles. Fortunately, the bus was empty of children at the time. There were no stop signs or stop lights to halt or slow traffic proceeding north or southbound on Romie Hill Road; thus, Thompson was proceeding with the right of way and without any traffic signal requiring him to slow down or stop. There were stop signs on each of the eastbound and westbound sides of County Road 300; thus, the school bus had to proceed through a stop sign in order to enter Ro-mie Hill Road. Whether Gregory came to a complete stop at this stop sign before entering Romie Hill Road became one of the contested factual issues in the case, but there was no dispute about the fact that Thompson faced no road sign, traffic light, or other warning signal as he approached the intersection of Romie Hill Road and County Road 300.
¶ 5. Gregory suffered only minor injuries from the collision, but Thompson suffered numerous injuries, including severe head trauma. Thompson was taken to the emergency room at North Mississippi Medical Center where he remained in a coma for three days. Thompson remained hospitalized until December 31, 1998, incurring roughly $50,000 in medical bills from his extended stay at the hospital.
¶ 6. Experts at trial testified that while Thompson has made a virtually full physical recovery, he suffers from permanent cognitive defects as a result of the head injuries caused by the accident. Among these permanent cognitive defects are the following: loss of language skill, mild dys-nomia, reduced motor functioning and coordination, abnormally reduced attentional skills, mental slowness and inefficiency in learning, and visual perceptual difficulties.
LEGAL ANALYSIS
I. DID THE TRIAL COURT ERR IN FINDING THOMPSON TO BE FIFTY PERCENT CONTRIBUTORILY NEGLIGENT?
¶ 7. Thompson argues that there was no credible evidence to support the trial court’s finding that he was fifty percent contributorily negligent. In support of this argument, Thompson points to various facts, which we will discuss more fully below.
¶ 8. Lee County argues that the trial court’s findings were not manifestly wrong or clearly erroneous and that this Court should leave those findings untouched.
*124 STANDARD OF REVIEW
¶ 9. The first thing to note is that the ease sub judice falls under the Mississippi Tort Claims Act (“MTCA”), and cases brought under the MTCA are tried by a judge, sitting without a jury. Mississippi Dept. of Public Safety v. Durn, 861 So.2d 990, 994(¶ 7) (Miss.2003) (citing Miss. Code Ann. § 11-46-13 (Rev.2002)). In cases, such as the present case, where a circuit court judge sits without a jury, we have held that our standard of review is the same standard that we apply to decisions of a chancellor. Davis v. Latch, 873 So.2d 1059, 1061(¶ 6) (Miss.Ct.App.2004). That means that we will not disturb the circuit court judge’s findings “unless they are manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Id. (citing City of Jackson v. Perry, 764 So.2d 373, 376(¶ 9) (Miss.2000)). A circuit court judge’s findings, therefore, “are safe on appeal where they are supported by substantial, credible and reasonable evidence.” Id. (quoting Maldonado v. Kelly, 768 So.2d 906, 907(¶ 4) (Miss.2000)). We have held further in this regard that:
This Court recognizes that the trial judge, sitting in a bench trial as the trier of fact, has the sole authority for determining the credibility of the witnesses. Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss.1987); Hall v. State ex rel. Waller, 247 Miss. 896, 903, 157 So.2d 781, 784 (1963). Where there is conflicting evidence, this Court must give great deference to the trial judge’s findings. McElhaney v. City of Horn Lake, 501 So.2d 401, 403 (Miss.1987).
City of Jackson v. Lipsey, 834 So.2d 687, 691(¶ 14) (Miss.2003). Thus, our standard of review is deferential, and in conducting our review, we must determine whether the trial judge’s findings were clearly erroneous or unsupported by “substantial, credible and reasonable evidence.” Davis, 873 So.2d at 1061(¶ 6).
DISCUSSION
¶ 10. In a recent case, this Court held that the assignment of contributory negligence turned upon the “factual underpinnings” of that case. City of Newton v. Lofton, 840 So.2d 833, 837(¶ 14) (Miss.Ct.App.2003). We find the same to be the case here. The assignment of contributory negligence in the case sub judice was based entirely upon certain inferences drawn by the trial judge from facts in the case; thus, we will examine these inferences in light of the evidence in the record. In finding that Thompson was contribu-torily negligent, the trial judge said the following:
Based on the only testimony concerning what parts of the vehicles came into contact, it seems apparent to me that the bus was hit by the automobile apparently in a fairly head-on circumstance, that is, the car was traveling straight in a northerly direction, striking the bus behind or in the vicinity behind the passenger door located on the right-hand side of the bus somewhat behind the driver’s seat, knocking the driver with apparent substantial force from his seat into the doorway breaking glass out, which indicates to me substantial impact, which as it applies to this case would indicate to me that the plaintiff, Joey Thompson, was traveling at an increased rate.
I do not know, but there is testimony or an indication that the speed limit there was 45 miles an hour. I do not know whether the speed exceeded J5, but it was a substantial impact, and, no doubt, caused pretty substantial injury to the vehicles, as well as to both of the drivers.
The front of the bus itself was based on the drawing which is a part of the *125 police report in this case which is probably conservative, by the way, because it would appear to me that in all likelihood the bus was at least as indicated in that drawing and possibly slightly more for the impact to have been in the northbound lane of traffic. In any event, all of these things considered, the Court is certainly of the opinion that the ... plaintiff in this case, Joseph Thompson, was contributorily negligent in causing the accident.
(emphasis added).
¶ 11. Not only do the trial judge’s own words belie the extremely tenuous eviden-tiary base upon which the court attempted to ground this ruling, but the evidence and testimony in the record further demonstrate that the conclusions of the trial judge, as quoted above, are clearly erroneous.
¶ 12. For instance, there was no reason supported by credible evidence for the judge to conclude that, because Gregory was thrown from his seat, Thompson must have been going in excess of forty-five miles per hour. There was no expert or other testimony as to the speed Thompson was traveling and there was no credible evidence in the record to suggest that Thompson was speeding; therefore, this inference is unreasonable, as it finds no evidentiary support in the record. Further, given how relatively minor Gregory’s injuries were (the record shows that he suffered some cuts to his elbow and head for which he was treated and released, and the officer who responded to the accident noted that Gregory appeared “banged up,” but not seriously injured), it is equally, if not more likely, using the trial court’s reasoning, that Thompson was not going above the posted speed limit. There was nothing in the record to suggest that it would take more force than a forty-five mile per hour impact to knock Gregory from his seat and break the glass of one of the windows. This conclusion was purely conjectural and unsupported by any substantial, credible evidence.
¶ 13. Moreover, we find in the record no justification for the conclusion that the drawing from the police report was “probably conservative” and should, therefore, have been taken to indicate something more than the drawing actually indicated. The “drawing” in the police report is a bare diagram, designed merely to show the general position and direction of the vehicles at the time of the impact. This drawing is not a “realistic” depiction of the accident, and given the nature of this drawing as such, it should not have been taken to convey a picture of the accident sufficient to support the kind of negative inference drawn by the trial court in this case. Having reviewed this drawing, we certainly do not find that it could reasonably be used to draw negative inferences about the actions of Thompson so as to support a finding of contributory negligence.
¶ 14. In addition, the trial judge declared, “I do not know whether the speed exceeded 45 [miles per hour];” yet, the trial judge went on to declare that notwithstanding the fact of his not knowing whether Thompson was speeding, he would conclude that Thompson was in fact speeding. Put another way, the trial judge said that even though he did not know that Thompson was speeding, he would nonetheless conclude that Thompson was speeding. Such a puzzling statement is contradictory on its face, and the finding of contributory negligence, being squarely based upon this contradictory statement, would constitute clear error in itself.
¶ 15. However, that clear error becomes compounded by the very high amount of contributory negligence that was predicated upon this facially contradic *126 tory conclusion. The judge’s assignment of fifty percent of the fault to Thompson means that the accident was just as much Thompson’s fault as it was Gregory’s. This conclusion, resting as it does upon a clearly contradictory prior conclusion (concerning the statement that even though the court did not know that Thompson was speeding, he would nevertheless be found to be speeding), would also constitute clear error. This error is further compounded by the invalidity of the only other stated reasons for the judge’s conclusion that Thompson was speeding and, therefore, equally at fault. Those reasons were (1) the already discussed conclusion that the drawing in the police report should (inexplicably) be taken to indicate something more than the drawing actually indicated and (2) the finding that there was “substantial” impact and injury to the vehicles.
¶ 16. Regarding this second reason, the trial judge stated that there appeared to be “substantial impact” and “substantial injury” to the vehicles, and that this could support the conclusion that Thompson was speeding. However, there is no credible evidence in the record to indicate the actual extent of the damage to the vehicles, nor is there any credible evidence in the record to justify the inference that, because of this supposed damage to the vehicles, Thompson must have been equally at fault. Gregory did testify that the bus was in a kind of “V” shape and “mashed in pretty bad” after the accident, but this was the only reference, outside of opening and closing arguments, to the damage to the vehicles. Thus, it is not at all clear from the record what “substantial impact” and “substantial injury to the vehicles” should be taken to mean in this case, other than, possibly “mashed in pretty bad,” which does not shed much more light on the subject.
¶ 17. Since we find no substantial, credible evidence to indicate the actual nature and extent of the damage to the vehicles, we do not believe that the trial judge’s inference drawn from this supposed substantial injury to the vehicles was justified. The logical leap from this undefined “substantial injury to the vehicles” to the conclusion that Thompson was speeding is simply too great, given the lack of evidence in the record. In short, having reviewed the record in its entirety, we find that there is no substantial, credible evidence in the record to support the conclusion that the impact was so substantial that Thompson must have been speeding and that, therefore, the accident must have been just as much Thompson’s fault as Gregory’s. Indeed, the judge’s own words do not go this far, in that he says, “I don’t know whether the speed exceeded forty-five.” As noted above, there was no expert or any other testimony, nor was there any physical or documentary evidence to justify the conclusion that the damage to the vehicles proved that Thompson must have been traveling above the posted speed limit.
¶ 18. As should be apparent from our discussion above, the trial judge’s ruling on the issue of comparative negligence is flawed by a facially contradictory statement, in addition to statements that are not supported by substantial, credible evidence. With all due respect to the trial court, this appears to us to be a textbook example of clear or manifest error. Indeed, if the clear error standard means anything, we believe it must mean that errors clear from the face of the trial judge’s ruling can justify reversal. Moreover, while we acknowledge that the trial judge indeed is afforded great deference, that deference is not so great as to allow the trial judge to inject into his decision findings that are not supported by substantial, credible evidence.
*127 ¶ 19. Based upon our review of the record, we find that the trial judge committed clear error in assigning to Thompson comparative negligence of fifty percent. There is no substantial, credible evidence in the record to support such a finding.
¶ 20. Going a step further, however, we find that there is no credible evidence- in the record to support a finding that Thompson was in any way at fault. This is because the record shows very simply that the bus pulled out into the, right of way and in front of Thompson. Further, but for the school bus pulling out into the right of way, the accident would not have happened, and it appears from the record that, given the fact that the road had only two lanes, the most that Thompson may have been able to do in any event would have been to swerve off the road in order to avoid the bus. We certainly cannot say that such a result would have been better or worse than what actually transpired. But we can say, based upon what we find in the record, that there is no credible evidence to support the conclusion that Thompson was partially at fault in this accident.
¶21. In order to find that Thompson was partially at fault in this accident would require one to accept as proven, as the trial judge did, certain facts that are not supported by credible evidence in the record. That we cannot do.
¶ 22. As Thompson points out for the sake of argument in his brief, given the distances involved, even if Thompson had been traveling as fast as 120 miles per hour, Gregory would have had as many as fifteen seconds of clear, unobstructed viewing time to see Thompson’s red truck approaching. Given the fact that no credible evidence in the record supports the conclusion that Thompson was going any speed above the posted limit (much less the clearly hypothetical and hyperbolic 120 miles per hour Thompson usés to prove his point), the court might easily- have concluded that Gregory had even more time in which he should reasonably have observed the approach of Thompson’s vehicle.
¶ 23. How on a clear day, looking down two unobstructed views of straight lanes of traffic,' Gregory succeeded in seeing one vehicle approaching in the southbound lane but failed to seé the red truck approaching from the northbound lane, we cannot 'say. We can say, however, what the answer to this question should not be. Given the evidence in this case, one could not reasom ably answer that because Gregory failed to see Thompson’s red truck approaching that, therefore, Thompson must have been doing something wrong. If there was evidence of negligence or wrongdoing on the part of Thompson, this case would be different, but such a conclusion is unreasonable, given the facts of this case, as there was no credible evidence of negligence or wrongdoing on the part of Thompson. Unless Thompson was traveling at a literally “blurring” rate of speed (in which case we doubt that Gregory would have left the accident with only minor injuries after the impact) then Gregory should have seen the approaching red truck from the north, just as he saw the other approaching vehicle from the south; and the fact thát Gregory failed .to see Thompson does not prove that Thompson must have been partially responsible for the accident.
¶ 24.. Very simply, the record shows that Gregory pulled out in front of Thompson and caused the collision. There was little or nothing that Thompson could have done to avoid or even minimize the accident. As noted, the road had only two lanes; thus, Thompson had nowhere to go, other than off the road, even if he had anticipated that Gregory would pull out in front of him. Also, given the point of *128 impact at the front end of the bus, we do not see how Thompson could have avoided a collision, even if he had been traveling less than the posted speed limit. If Thompson had rear-ended the bus, for example, this case might be different, but, as the facts of this case stand, we do not believe that fault should be assigned to Thompson based upon his failure to take extreme, split-second evasive maneuvers in reaction to or in anticipation of Gregory’s negligence.
¶ 25. We find that the trial court’s finding of contributory negligence was clearly erroneous, and we find further that the record contains no credible evidence that the accident was caused in any part by Thompson’s actions. Therefore, we reverse the trial judge’s assignment of fifty percent comparative negligence to Thompson, and render to remove any assignment of comparative negligence to Thompson.
II. DID THE TRIAL COURT ERR IN DETERMINING THE AMOUNT OF DAMAGES?
¶ 26. Thompson argues that the amount of the damage award was so unreasonable that it should be overturned. In particular, Thompson argues that the amount of the damage award did not take into account the costs of dealing with Thompson’s permanent cognitive defects from which he suffers as a result of his head injuries.
¶ 27. Lee County argues that an appellate court should not reverse a damage award simply because it seems too low, but that the award must be so low as to be unreasonable or outrageous in amount. Lee County also urges repeatedly that, although it is undisputed that Thompson has permanent cognitive defects, he will incur no costs in dealing with and treating these permanent defects, because all of the services Thompson needs are available from the State “at no cost.”
STANDARD OF REVIEW
¶ 28. Our standard of review of damage awards in a bench trial has been stated as follows:
In bench trials such as this, a circuit judge is subject to the same standard of review as that of a chancellor. Sweet Home Water & Sewer Ass’n v. Lexington Estates Ltd., 613 So.2d 864, 872 (Miss.1993). Therefore, the circuit judge’s decision will not be disturbed as long as substantial, credible, and reasonable evidence exists to support the ruling. Allied Steel Corp. v. Cooper, 607 So.2d 113, 119 (Miss.1992).
DePriest v. Barber, 798 So.2d 456, 459(¶ 10) (Miss.2001). Thus, our standard of review for this issue is the same standard as that employed for issue one, and we will review the record to determine whether the trial judge’s findings were clearly erroneous or unsupported by “substantial, credible and reasonable evidence.” Id.; Davis, 873 So.2d at 1061(¶ 6).
DISCUSSION
¶ 29. It is undisputed that Thompson incurred roughly $50,000 in medical bills from his initial stay in the hospital after the accident. It is also undisputed that Thompson suffers from permanent cognitive defects as a result of the head injuries he sustained in the accident. Thompson attempted to show that it would be costly for him to deal with these permanent cognitive defects, because he would be in need of the help of professionals in order to complete his education and in order to begin and maintain a career or vocation. In addition, Thompson argued that these permanent cognitive defects have considerably lessened the range of potential jobs that Thompson may now be able to perform.
¶ 30. Lee County maintains that, although Thompson suffers from permanent *129 cognitive defects as a result of his head injuries, he will be able to receive all of the medical and/or professional assistance he may need throughout the entire remainder of his life “at no cost” from the State. In particular Lee County repeatedly referred to the Mississippi Department of Vocational Rehabilitation as a means by which Thompson could receive the services he needs at no cost.
¶31. In determining the amount of damages to which Thompson was entitled the trial judge declared in his October 6, 2003 bench ruling, “The Court is of the opinion that judgment be entered for the plaintiff in this case in the sum of $100,000.” In the written judgment that was entered on October 9, 2003, the trial judge declared:
[T]he plaintiff is entitled to a judgment of and from the Defendant, Lee County School District, and the Court does assess Plaintiffs total damages to be $200,000, and does further find that Plaintiffs actions constituted comparative negligence, which the Court finds to be 50 per cent [sic], and therefore the Court awards a total judgment in favor of Plaintiff of and from the Defendant, Lee County School District, in the amount of $100,000.00, for which execution may issue according to law.
¶ 32. There was no further elaboration on how the judge arrived at this amount of damages or whether this amount included or excluded pain and suffering, future medical expenses, loss of earning capacity, and/or other possible items of damages.
¶ 33. The question of the excessiveness or inadequacy of an award of damages has generally been conducted on a case-by-case basis. Brandon HMA, Inc. v. Bradshaw, 809 So.2d 611, 621(1136) (Miss.2001); Jesco, Inc. v. Shannon, 451 So.2d 694, 705 (Miss.1984). That is to say, the particular facts of each case have predominated in the inquiry, such that the results of orn-eases on this issue are very divergent.
¶ 34. In some cases, for example, we have upheld an award far in excess of the plaintiffs medical expenses, or we have ordered an additur or upheld the trial court’s ordering an additur where the jury award was unreasonably low and failed to fairly compensate the plaintiff for all items of damages that were shown by the evidence to be present. In the case of KM. Leasing, Inc. v. Butler, ex rel. Butler, 749 So.2d 310 (Miss.Ct.App.1999), we upheld an award of roughly ten times the amount of the injured plaintiffs medical bills. Id. at 313 (¶¶ 1-4) (jury awarded a total of roughly $1.8 million dollars where the medical bills were shown to be $161,000). Also, in Scott Prather Trucking, Inc. v. Clay ex rel. Sanders, 821 So.2d 819 (Miss.2002), our supreme court found that an award of $35,800 in damages where roughly $48,000 in damages were proven, including future dental care expenses, was so inadequate as to justify an additur of $114,200, bringing the total amount of damages awarded to $150,000. Id. at 822-23(¶ 15). Other cases have similar holdings: Rodgers v. Pascagoula Public School District, 611 So.2d 942 (Miss.1992); Pham v. Welter, 542 So.2d 884 (Miss.1989); Matkins v. Lee, 491 So.2d 866 (Miss.1986); City of Jackson v. Ainsworth, 462 So.2d 325 (Miss.1984); Biloxi Elec. Co. v. Thorn, 264 So.2d 404 (Miss.1972).
¶ 35. In other cases, however, our courts have upheld awards that amounted to little more than the amount of medical expenses proven. For instance, in Clark v. Deakle, 800 So.2d 1227 (Miss.Ct.App.2001), this Court upheld a damage award of only $12,000, where the plaintiff demonstrated $11,488.45 in medical bills. Id. at 1231(¶ 17). Thus, the question of the adequacy or inadequacy of damages will depend upon the facts of the particular case. *130 Bradshaw, 809 So.2d at 621(¶ 36); Jesco, 451 So.2d at 705.
¶ 36. In the case sub judies, we find that the trial judge’s award of damages was inadequate, as it was not based upon substantial and credible evidence. It is undisputed that (1) Thompson now suffers from permanent cognitive defects, such as loss of language skill, mild dysnomia, reduced motor functioning and coordination, abnormally reduced attentional skills, mental slowness and inefficiency in learning, and visual perceptual difficulties; (2) Thompson’s potential earning capacity has been reduced due to these various, permanent cognitive defects; and (3) Thompson has experienced much pain and suffering. There is no indication in the trial court’s judgment that these undisputed damages were included in its award.
¶37. As noted above, Lee County argues repeatedly that Thompson will be able to receive all of the professional care and treatment he needs, medical, educational, and vocational, in the present and in the future “at no cost” from the state (bear in mind that Thompson is now roughly twenty-five years of age). We find this argument to be tenuous at best. While we certainly acknowledge that there may be some state-sponsored services and programs from which Thompson may receive some of his continuing treatment, we find it incredible, to say the least, to argue that Thompson will incur “no cost” whatsoever in his continuing battle with the permanent cognitive defects he now carries with him because of this accident. Not only do we doubt that the state can and will, in fact, offer all of these professional services to Thompson for free, but, even if we assume that the state can and will offer all of these professional services to Thompson now in the present, there is no way of knowing whether those so called cost-free services will continue to be available for the duration of Thompson’s needs in the future.
¶ 38. It is not clear from the record whether this untenable argument of Lee County bore any weight with the trial judge; but it is clear from the record that the trial judge did not adequately take into account all of the various undisputed items of damages demonstrated by Thompson.
¶ 39. Therefore, we reverse the award of damages as inadequate and unreasonably low, and we remand this issue to the trial court for a new trial to determine the proper measure of damages, bearing in mind all of the items of damages mentioned in this opinion.
¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS REVERSED AND RENDERED IN PART, AND REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P. JJ., CHANDLER, GRIFFIS AND ISHEE, JJ. CONCUR. IRVING, J., CONCURS IN RESULT ONLY. BARNES, J., NOT PARTICIPATING.