RANDOLPH, Justice,
Dissenting.
¶ 31. The Lee County Circuit Court assigned contributory negligence to Thompson despite an absence of “substantial, credible, and reasonable evidence,” City of Jackson v. Perry, 764 So.2d 373, 376 (Miss.2000) (citing Puckett v. Stuckey, 633 So.2d 978, 982 (Miss.1993)), to support that conclusion. Moreover, the damages awarded to Thompson were unreasonably low so as to shock the conscience of this Justice, taking into account the magnitude of injuries sustained by Thompson as the result of an accident for which no proof exists in the record that he was responsible. Therefore, to the extent the majority’s opinion affirms the judgment of the circuit court, I must dissent.
¶ 32. In accord with the unanimous decision of the Court of Appeals, the trial court’s assignment of contributory negligence to Thompson should be reversed, and judgment should be rendered in favor of Thompson and against Lee County on the issue of negligence. Furthermore, the trial court’s inadequate and unreasonable award of damages should be reversed and remanded to the trial court for a new trial on the issue of damages.
I. Whether the trial court erred in finding the Plaintiff driver to be contributorily negligent.
¶ 33. The majority opinion properly states that, “ ‘[a] circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor,’ and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence.” Id. (emphasis added). Based upon the evidence presented, the trial judge determined in his findings and conclusions that Mr. Gregory stopped the bus at the stop sign on County Road 300; looked to his left and right; did not observe a vehicle coming from the right (the south); proceeded across Romie Hill Road; and the collision occurred in the northbound lane of traffic. From those findings, and the trial court’s unsubstantiated inferences on the manner in which the vehicles came in contact,[15] the trial judge concluded that “plaintiff, Joey Thompson, was traveling at an increased rate.” This conclusion was reached despite the trial judge’s own acknowledgment that no facts supported the finding that Thompson was speeding.[16] From those dubitable conclusions, the trial *76 court determined Thompson was equally contributorily negligent for the accident.[17]
¶ 34. The majority opinion references Miss.Code Ann. Section 63-3-805 in defending the final judgment of the trial court. Miss.Code Ann. Section 63-3-805 states:
The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said highway or which are approaching so closely on said through highway as to constitute an immediate hazard. However, said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.
The driver of a vehicle shall likewise stop in obedience to a stop sign as required by this chapter at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed.
(Emphasis added). Assuming Gregory did come to a complete stop at the stop sign on County Road 300, he still had the duty not to enter the intersection without a proper lookout. To “proceed cautiously” naturally involves maintaining a proper lookout, as well as yielding to those vehicles which are “approaching so closely as to constitute an immediate hazard.” Miss.Code Ann. Section 63-3-805. That the accident occurred more than suggests Thompson’s truck posed an “immediate hazard.” Id. Moreover, Gregory admitted he had no idea why he never saw Thompson’s truck approaching. The clear and obvious inference is that he failed to “proceed cautiously,” by failing to maintain a proper lookout. See Shideler v. Taylor, 292 So.2d 155 (Miss.1974) (automobile driver has a duty to see that which is in plain view, open and apparent; to take notice of obvious danger; and to be on alert so as to avoid collision with objects, vehicles, and others using highway); Campbell v. Schmidt, 195 So.2d 87 (Miss.1967) (a motorist is charged with seeing what he should have seen); Tippit v. Hunter, 205 So.2d 267 (Miss. 1967) (automobile driver is chargeable with knowledge of all conditions which would be obtainable by the exercise of his faculties, and it is his duty to see that which is in plain view or open and apparent and to take notice of obvious dangers). As a result, he pulled out in front of Thompson’s truck, a vehicle which he should have, but failed to, see. Gregory never claimed he believed Thompson’s car was far enough away so as not to constitute an “immediate hazard.” All he stated was: “I did not see him.” The following are uncontested facts: Gregory had an unobstructed view of oncoming traffic from the northbound lane of Romie Hill Road for approximately one-half mile; he was familiar with the intersection;[18] it was a clear day; and Thompson’s truck was red. Utilizing calculations commonly accepted in trial courts, and presented in Appellant’s brief, even had Thompson been traveling *77 at 120 miles per hour, Gregory would have had fifteen (15) seconds in which to clearly observe the oncoming vehicle. This distinguishes the case sub judice from Redmond v. Breakfield, 840 So.2d 828, 832 (Miss.Ct. App.2003), where the Court of Appeals found:
Breakfield’s testimony that Redmond’s vehicle was not in sight just moments before the collision would clearly support an inference by the jury that Redmond was only able to cover such a large distance in so short a time by traveling at a hazardously high rate of speed. Additionally, Breakfield made reference to the degree of damage inflicted on his truck as evidence tending to show that Redmond’s vehicle must have been traveling at a relatively high rate of speed at impact. We find this evidence of Redmond’s possible excessive speed to be enough to support an inference that this was the cause of the collision.
There is no evidence indicating Thompson was traveling over the speed limit of 45 miles per hour. As such, there was an absolute absence of “substantial, credible, and reasonable evidence,” Perry, 764 So.2d at 376, Thompson was negligent. Therefore, Gregory’s lack of caution in entering the intersection without observing the plaintiff, who was travelling on the primary road, renders the clear result that the right-of-way never transferred to him. The requirement of Miss.Code Ann. Section 63-3-805 for the right-of-way to attach to Gregory was that he proceed with caution and yield to vehicles approaching so closely as to constitute an immediate hazard. That threshold requirement was never met by Gregory based on his sworn testimony.
¶ 35. Therefore, the Court of Appeals was eminently correct in finding that any contributory negligence apportioned to Thompson by the trial judge was “belie[d][by] the extremely tenuous evidentia-ry base upon which the court attempted to ground this ruling....” Thompson, 925 So.2d at 125, 2005 WL 895026 at * 3. In the absence of any “substantial, credible, and reasonable evidence,” Perry, 764 So.2d at 376, that Thompson was negligent, it was utterly improper for the trial judge to impute equal, or any, contributory liability upon Thompson for the accident.[19] To grant that level of.deference to the trial judge, as the majority does, is plainly flawed.
¶ 36. The majority opines, “[j]ust because a person may be driving on a through highway with the lawful right-of-way to proceed through an intersection with another road where there are located stop signs, does not mean that person may approach and enter the intersection with impunity and without exercising caution.” Majority Opinion at 23 (emphasis added). This statement is unquestionably true. See generally, Redmond, 840 So.2d at 831. However, the statement implies Thompson “enter[ed] the intersection with impunity and without exercising caution,” despite the absence of one iota of supporting evidence in the record. One may only conjure or speculate such a finding, due to Gregory’s negligent failure to “proceed cautiously” in the face of an “immediate hazard.” The trial court’s decision to hold Thompson contributorily negligent for Gregory’s mistake, in the absence of any “substantial, credible, and reasonable evi *78 dence,” Perry, 764 So.2d at 376, was clear error.
II. Whether the trial court erred in assessing the total damages suffered by the Plaintiff driver.
¶ 37. The majority opinion sets forth the applicable standard of review for assessing damage awards, stating:
In Lewis v. Hiatt, 683 So.2d 937, 941 (Miss.1996), this Court reasoned that “[i]t is primarily the province of the jury [and in a bench trial the judge] to determine the amount of damages to be awarded and the award will normally not ‘be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.’ ” Id. (quoting Harvey v. Watt, 649 So.2d 184, 187 (Miss.1995)). Foster v. Noel, 715 So.2d 174,183 (Miss.1998).
Majority Opinion at 72. This is a “very high standard of review.” Brandon HMA, Inc. v. Bradshaw, 809 So.2d 611, 621 (Miss.2001). In interpreting that standard, the majority asks: “can we say with confidence that, based on the totality of the record before us, the trial judge’s assessment of damages was so unreasonably low and outrageous that his judgment must be reversed and the ease remanded for a new trial as to damages.” Majority Opinion at 74.
¶ 38. As a result of the accident, Thompson incurred approximately $50,000 in medical bills from being hospitalized for twenty-seven (27) days.[20] Moreover, he sustained permanent cognitive defects from the head injury, including “loss of language skill, mild dysnomia, reduced motor functioning and coordination, abnormally reduced attentional skills, mental slowness and inefficiency in learning, and visual perceptual difficulties.” Thompson, 925 So.2d at 130, 2005 WL 895026 at * 1. In addition to the medical treatment he required at the time of the accident, he has since undergone extensive physical and psychological therapy. As a result of his disabling condition,[21] Thompson’s once-promising football career[22] was effectively ended. The report of Dr. Boll indicated that cognitively Thompson had permanently lost significant language, motor function, attention, and mental skills.[23] Sherry Gill, Thompson’s older sister and employer, testified Thompson’s memory problems following the injury rendered him unable to be left alone during work hours, such that *79 he made a poor employee. Gill further testified that Thompson had become socially withdrawn, frustrated with his troubles in communicating, and prone to crying spells as a result of his frustrations, a marked difference from the outgoing, athletic younger brother she remembered pri- or to the accident.[24]
¶ 39. The Court of Appeals found the trial judge failed to elaborate “on how [he] arrived at this amount of damages or whether this amount included or excluded pain and suffering, future medical expenses, loss of earning capacity, and/or other possible items of damages.” Id. at 129, 2005 WL 895026, * 8. For that reason, the Court of Appeals unanimously “reverse[d] the award of damages as inadequate and unreasonably low, and ... remanded] this issue to the trial court for a new trial to determine the proper measure of damages, bearing in mind all of the items of damages mentioned in [the] opinion.” Id. at 130, 2005 WL 895026, * 9.
¶ 40. In affirming the trial court’s total damage award of $200,000,[25] the majority opines that the very high burden of an unreasonably low and outrageous damage award was not met here. This finding is based, in part, on the premise that Thompson was contributorily negligent. As that premise is rendered erroneous by the lack of “substantial, credible, and reasonable evidence,” Perry, 764 So.2d at 376, that Thompson was at fault, the damage issue should be reconsidered. Thompson incurred a permanently disabling condition as a result of an accident for which he was not responsible. Moreover, to award damages of $200,000 without any apparent consideration, or at least explanation, of whether the award includes pain and suffering, future medical expenses, loss of earning capacity, or other items of damages,[26] necessitates a new trial on the issue of damages. “The determination of damages must be a process which is particular to the facts of the case; there is no fixed rule.” City of Newton v. Lofton, 840 So.2d 833, 837 (Miss.Ct.App.2003). In making that determination, “[t]he trial court takes into account: amount of physical injury, mental and physical pain, present and future pain and disability, temporary and permanent disability, medical expenses, loss of wages and wage earning capacity, sex, age, and health of the injured.” Id. (citing Woods v. Nichols, 416 So.2d 659, 671 (Miss.1982)). In Scott Prather Trucking, Inc. v. Clay, 821 So.2d 819, 822 (Miss.2002), this Court affirmed a trial court’s additur because the jury’s award of damages was “contrary to the overwhelming weight of the credible evidence.” The jury’s award was found to have ignored future medical expenses, permanent impairment and disfigurement, pain and suffering, and loss of enjoyment of life incurred by the injured plaintiff. Id.; see also Rodgers v. Pascagoula Public School Dist., 611 So.2d 942, 945-46 (Miss.1992) (additur granted for failure of jury to consider plaintiffs pain and suffering); Pham v. Welter, 542 So.2d 884, 889 (Miss.1989) (additur granted for failure of jury to consider plaintiffs future pain and suffering and permanent partial disability).
¶ 41. Thompson, 19 years old at the time of the accident, had his life irreparably altered by the consequences of this *80 accident. His once-promising football abilities were dashed; his cognitive functions are permanently impaired; his employability has become significantly diminished; and he has been cast into a frustrated sense of despair, a shadow of his former vibrant self. To improperly find him con-tributorily negligent and then award him inadequate damages, with no explanation of the factors contained within that calculation, merits reversing and remanding to the trial court for a new trial on the issue of damages.
CONCLUSION
¶ 42. I agree with the unanimous decision of the Court of Appeals, reversing the trial court’s assignment of contributory negligence to Thompson and reversing and remanding to the trial court for a new trial on the issue of damages. Therefore, I respectfully submit my dissent to the majority opinion.
COBB, P.J., and GRAVES, J., join this opinion.

. The trial court made these inferences despite the absence of any testimony from an accident reconstruction expert on the subject. As the Court of Appeals stated:
we find in the record no justification for the conclusion that the drawing from the police report [a diagram of the accident] was 'probably conservative' and should, therefore, have been taken to indicate something more than the drawing actually indicated.... This drawing is not a 'realistic' depiction of the accident, and given the nature of this drawing as such, it should not have been taken to convey a picture of the accident sufficient to support the kind of negative inference drawn by the trial court....
Thompson v. Lee County School District, 925 So.2d at 125, 2005 WL 895026 at *4 (Miss.Ct. App.2005).

. The trial judge stated: "I do not know whether the speed exceeded 45 [miles per hour], but it was a substantial impact and, no doubt, caused pretty substantial injury to the vehicles, as well as to both of the drivers.” Furthermore, Gregory himself made no statements regarding Thompson's speed at the time of the accident, but rather testified that he did not see Thompson's vehicle until after the accident. As the Court of Appeals concluded: “there was no credible evidence in the record to suggest that Thompson was speeding; therefore, this inference is unreasonable, as it finds no evidentiary support in the record.” Thompson, at 125, 2005 WL 895026 at * 3. For instance, no evidence was presented indicating that an accident at 45 miles per hour or less could not have resulted in this “substantial impact.”

. Defendants did not plead comparative/contributory negligence as an affirmative defense in responding to Thompson's Complaint.

. Gregory had been driving school buses in this area for 27 years at the time of the accident. Clearly he understood that the bus accelerated slowly, and that fact should have weighed into any "proceed cautiously” calculation he was making.

. Just as the Court of Appeals stated: "to find that Thompson was partially at fault in this accident would require one to accept as proven, as the trial judge did, certain facts that are not supported by credible evidence in the record. That we cannot do.” Thompson, at 127, 2005 WL 895026 at *6.

. The doctors initial assessment was that Thompson had a fifty percent chance of coming out of the coma he eventually stayed in for three days. Additionally, Thompson spent his first fourteen (14) days hospitalized in the intensive care unit.

. On cross-examination, Dave Stewart, a certified life care planner and rehabilitation counselor, testified that persons who seek vocational rehabilitation usually have a disability or have sustained a disabling condition.

. Prior to attending Itawamba Community College ("ICC”) on a football scholarship, Thompson had been contacted by Ole Miss, Mississippi State, Arkansas, and Rice University about playing football. At ICC, Thompson started every game as a freshman and his coach, Jay Miller, testified that he had a ninety-nine percent chance to play at the four-year college level. The accident occurred in December following his freshman season. In his sophomore season, Thompson was relegated to playing special teams only. Miller testified that Thompson's reaction times had slowed considerably; that he was slower in answering questions; and that he had a harder time answering questions. In total, Miller stated there was a marked difference in Thompson's speech and motor skills following the accident.

.Nancy Thompson, Thompson’s mother, testified that, post-accident, her son’s memory, money management skills, and grades had diminished significantly.

. Thelma Hubbard, Thompson's older sister, testified he had become deeply depressed and told her "he wished he had died” in the accident.

. Only $100,000 went to Thompson because he was deemed 50% contributorily negligent.

. Other damages might include loss of enjoyment of life. See Kansas City Southern Ry. Co., Inc. v. J.C. Johnson, 798 So.2d 374, 380-81 (Miss.2001).